HOOD, Judge.
This is an action for property damages sustained by plaintiff when a trailer and two horses owned by him were damaged or destroyed as the result of a motor vehicle collision. The suit was instituted by Terry Fusilier against Dixie Automobile Insurance Company, Great American Insurance Company and The Borden Company. Prior to trial, plaintiff voluntarily dismissed the suit as to the last two named defendants, leaving Dixie Automobile Insurance Company as the sole remaining defendant insofar as plaintiff’s claim for damages is concerned.
Dixie answered plaintiff’s petition and filed a third party action against Great American, alleging that the latter owed a duty to defend Dixie, that it failed to do so, and that Dixie thus is entitled to recover from Great American the attorney’s fees and other expenses incurred by it in defending this suit.
Judgment was rendered by the trial court in favor of plaintiff and against Dixie, awarding plaintiff damages in the sum of $2,500.00. Judgment also was rendered in favor of Great American and against Dixie, rejecting the latter’s third party demands. Dixie has appealed.
The following issues are presented: (1) Was Woodrow J. Reed, the driver of plaintiff’s automobile, guilty of actionable negligence? (2) If Reed was at fault, should his negligence be imputed to Fusilier, barring the latter from recovering? (3) Does the policy issued by Dixie exclude coverage of damages to the trailer and the horses under the circumstances presented here? (4) Is Great American obligated to Dixie for the expenses incurred by the latter in defending this suit?
The accident occurred at 1:05 P.M. on October 3, 1968, at an intersection of two state highways, in Waynesville, Warren County, Ohio. Plaintiff at that time was riding as a passenger in his own automobile, which was being driven by Woodrow J. Reed. The automobile was pulling a horse trailer, with two horses in it, the trailer being attached to the rear of the car by means of a trailer hitch. Fusilier owned the trailer and the horses. As the Fusilier automobile and trailer combination was proceeding north through the above mentioned intersection, a truck owned by The Borden Company and traveling east ran into the left side of the trailer, damaging the trailer and killing both of the horses which were in it.
The highway on which plaintiff’s automobile was traveling was a four-lane, divided, hardsurfaced thoroughfare. The east-west highway on which the Borden truck was being driven was a two-lane thoroughfare of similar construction. The intersection of these two arteries was controlled by a semiphore traffic light. Plaintiff contends that Reed was negligent in entering the intersection on a red traffic light, and that his negligence in that respect was a proximate cause of the accident. Defendant Dixie contends that Reed entered the crossing on a green traffic light, that he was not negligent and that *225 Dixie, as his insurer, thus is not liable in damages to plaintiff.
At the time this accident occurred there was in effect a liability insurance policy issued by Great American to Fusilier, covering the automobile owned by the insured and being driven by Reed. The policy provided for property damage coverage up to $5,000.00. Also, in effect at that time was a liability policy issued by Dixie to Woodrow J. Reed, covering a pickup truck owned by Reed (not involved in the accident), and this policy provided protection for the named insured while driving other vehicles. That policy also provided property damage coverage up to $5,000.00.
All parties concede that if coverage is provided by both of said policies, then Great American must be considered to be the primary insurer, with Dixie providing only excess coverage. After the suit was instituted, Great American paid the sum of $5,000.00 to other parties, that being the full extent of its liability for property damage under the insurance contract. With that payment it depleted its policy limits, and plaintiff thereafter dismissed the suit as to Great American and as to Borden. Plaintiff, contending that his damages exceeded the policy limits of the primary insurer, seeks to recover from Dixie under its excess coverage.
No question has been raised by any of the parties as to whether the substantive law of Ohio of that of Louisiana should be applied. They apparently assume, as we do, that the laws of these two states relating to liability in a case of this kind are the same, and that the issue of negligence must be resolved by a factual finding as to whether Reed entered the crossing on a red or a green light.
The trial judge found that “the accident was brought about by the negligence of Woodrow J. Reed when he failed to stop at the intersection for the red light. The Bor-dón Company semi-tractor had the right of way and the green light. The negligence of Woodrow J. Reed was therefore the sole and proximate cause of the accident.” We ultimately conclude that the trial judge erred in reaching that conclusion:
Fusilier and Reed were the only witnesses who testified at the trial. Both of them testified that Reed entered the intersection on a green traffic light. We can find no evidence at all in the record to the effect that Reed violated a traffic signal or was negligent in any way.
Plaintiff Fusilier’s own testimony relating to the traffic signal is as follows:
“A. Well, we was going down the road and I looked up, I saw — we saw the light, it was green.
;{c >j< ají 5j« % >fc
“Q. And your recollection is that Woodrow had the green light?
“A. Yes.

“O. Would you say that you were fairly close to it?
“A. I wouldn’t want to judge, because we had just come down, we looked up, I saw it green, and I’m sure he did too. We kept on, the car had cleared the intersection when we got hit.

“Q. And at that point you were near enough that you looked at it and saw it was green and felt you could go through it alright?
“A. That’s right.

“O. And was it your testimony that the last time you saw the light was green ?
“A. That’s right.
“Q. And there was a light controlling the intersection and the light was green insofar as you’re concerned *226 when you entered the intersection, is that correct?
“A. Yes sir.
“Q. Now, in view of that, did you see Reed do anything wrong that caused the accident?
“A. No.”
The testimony of Reed, with reference to the traffic light, is as follows:
“Q. Did you ever notice the signal light at the intersection?
“A. No sir.
“Q. So you’re not able to tell us whether this light was red or green?
“A. No sir.

“Q. Now, as you were coming down the four-lane, before the accident happened, what color was the light the last time you saw it before you got * * * ? (witness interrupts)
“A. Green.”
The above constitutes all of the evidence we have been able to find in the record relating to the traffic lights at this intersection when the accident occurred. It is positive and uncontradicted to the effect that Reed entered the crossing on a green light, and that he was not negligent.
Counsel for plaintiff points out that Reed was given a “ticket” following this accident, and that he pleaded guilty and was given a $15.00 fine. The record does not show what charge was filed against Reed, and the evidence is clear that Reed pleaded guilty because Fusilier asked him to do so and because the parties wanted to avoid any further delay in their trip. Under those facts, we cannot interpret this criminal charge and plea of guilty as establishing that Reed violated a red traffic light or that he was negligent in any other way.
Our decisions must be based on the evidence which is presented in the record. In the instant suit, we conclude that the trial court clearly erred in finding that Reed ran a red light. There is nothing in the record which indicates negligence on the part of Reed. We find, therefore, that he was free from negligence, and that the trial judge erred in rendering judgment in favor of plaintiff and against Dixie.
Since we have concluded that Reed was not negligent, it is unnecessary for us to consider the second and third issues presented, that is, whether any negligence on the part of Reed should be imputed to Fusilier, and whether the policy issued by Dixie excludes coverage of damages to the trailer and horses.
We turn now to the remaining question of whether Great American was obligated to defend Dixie in this suit, and thus whether Dixie is entitled to recover from Great American the costs which it incurred for attorney’s fees, adjusting services and other expenses in defending the suit.
The policy issued by Great American to Fusilier provides that “ * * * the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent * * * ” The policy issued by Dixie to Reed contains substantially the same provision. As we have already noted, Great' American was the primary insurer and Dixie was the excess insurer.
Each of these policies provided property damage coverage up to a limit of $5,000.00. Plaintiff, however, sued for damages in the amount of $21,765.00, which amount is substantially in excess of the coverage provided by the primary insurer. It, in fact, was for more than the combined total of the limits provided in both policies. Great American paid the full limits of its policy, and obtained a dismissal of the suit as to it, and plaintiff now is endeav *227 oring to recover additional damages from Dixie under its excess coverage.
Shortly after the suit was filed and before it came up for trial, Dixie made formal demand on Great American to assume the defense of Dixie. Great American refused. Dixie then provided its own defense, and by the third party action which is before us now, it seeks to recover from Great American the costs which it incurred as attorney’s fees and other expenses in resisting plaintiff’s claims.
Great American argues • as its primary defense to the third party action that coverage of property damages to the trailer and horses was specifically excluded in its policy, and that it thus did not owe a duty to defend in an action for such damages. We have concluded that Great American did not owe a defense to Dixie in this case for other reasons, so it is unnecessary to determine whether coverage was excluded under the Great American policy.
Substantially the same issues were presented in Cooper v. Christensen, 212 So.2d 154 (La.App. 4 Cir. 1967), as are before us in the instant suit. There, Government Employees Insurance Company was the primary liability insurer, with policy limits of $50,000.00 for bodily injury and $5,000.-00 for property damage. Aetna Casualty and Surety Company was the excess insurer, with limits of $10,000.00 for bodily injury and $10,000.00 for property damages. Plaintiffs sued both insurers for a total of $59,125.76, which amount was slightly in excess of the limits provided in the primary policy. Substantially less than the limits of the Government Employees policy was allowed by the trial court and by the Court of Appeal. Aetna, contending that the primary insurer should have defended it in the suit, filed a third party demand against Government Employees for attorney’s fees and costs which it incurred in defending the suit. The issue presented, therefore, was identical to the one which is before us now. The Fourth Circuit Court of Appeal rejected Aetna’s demands on the grounds that since the claim was in excess of the primary policy limits, the excess insurer had an interest in defending the suit for its own protection. The court said:
“We find Aetna Casualty’s contention to have no merit. * * *. The demand for bodily injury was $6,572.69 in excess of Government Employees limits. * * Therefore, as an excess insurer, Aetna Casualty certainly had an interest in defending the suit as it did.”
In the instant suit Dixie, as the excess insurer, had an interest in defending this suit for its own protection, since the claim was for more than the limits of the primary insurance policy. Dixie thus cannot recover from Great American the attorney’s fees and other costs which it incurred in defending this suit.
For the reasons herein set out, that part of the judgment appealed from which condemns defendant, Dixie Automobile Insurance Company, to pay the sum of $2,-500.00 to plaintiff Fusilier is reversed, and judgment is hereby rendered in favor of Dixie Automobile Insurance Company and against Fusilier, rejecting plaintiff’s demands at his costs. That part of the judgment which rejects the third party demand of Dixie Automobile Insurance Company against Great American Insurance Company is affirmed. One-half the costs of this appeal are assessed to plaintiff, Fusilier, and the remaining one-half of said costs are assessed to defendant, Dixie Automobile Insurance Company.
Affirmed in part, and reversed in part.
On Application for Rehearing
En Banc. Rehearing denied.