424 So.2d 1059 (1982)
PETROL INDUSTRIES, INC., Plaintiff-Appellant,
v.
GEARHART-OWEN INDUSTRIES, INC.; Appalachian Insurance Company and Employers Casualty Company, Defendants-Appellants-Appellees.
No. 15093-CA.
Court of Appeal of Louisiana, Second Circuit.
November 29, 1982.
*1060 Bodenheimer, Jones, Klotz & Simmons by J.W. Jones, Shreveport, for plaintiff-appellant.
Cook, Yancey, King & Galloway by Benjamin C. King, Shreveport, for defendants-appellants-appellees Gearhart-Owen and Appalachian Ins. Co.
Mayer, Smith & Roberts by Paul R. Mayer, Shreveport, for defendant-appellant-appellee Employers Cas. Co.
Wiener, Weiss, Madison & Howell by James Fleet Howell, Shreveport, for defendant-appellee, Scogin Well Service, Inc.
Before HALL, FRED W. JONES, Jr. and NORRIS, JJ.
FRED W. JONES, Jr., Judge.
In this suit for damages for the destruction of an oil well due to an explosion which occurred during an attempt to patch a hole in the casing, the issues presented on appeal are:
(1) Did the trial judge make an inadequate damage award?
(2) Did the comprehensive general liability insurance policy issued by Employers Casualty Company to Gearhart-Owen Industries, Inc. afford coverage for the accident and damages in question?
For the reasons hereinafter explained, we answer both questions in the affirmative, but amend the district court judgment in the particulars described.
In 1975 Petrol Industries, Inc. ("Petrol") orally contracted with Gearhart-Owen Industries, *1061 Inc. ("Gearhart-Owen") to patch a hole in the casing of a Caddo Parish oil well (owned and operated by Petrol), at about the 2500 to 2700 foot subsurface level. Pursuant to this agreement, Gearhart-Owen sent its employee, Gaston, to the well site. Acting under Gaston's supervision and direction, one of his helpers and personnel from Scogin Well Service (hired by Gearhart-Owen to assist in the repair operation with a workover rig) assembled a patching tool and ran it into the well bore.
When the patching tool was activated in an attempt to patch the well casing in place, at the described subsurface level, an explosion occurred which resulted in the loss of the patching tool and damage of such severity to the casing that the well was plugged and abandoned.
As a result of this accident, in June 1976 Petrol filed this damage suit against Gearhart-Owen and its insurer, Appalachian Insurance Company ("Appalachian"). Subsequently, in an amended petition Petrol joined as a defendant Employers Casualty Company ("Employers"), another alleged insurer of Gearhart-Owen, together with other parties not involved in this appeal.
Gearhart-Owen and Appalachian filed a third party demand against Employers, asserting that Appalachian was Gearhart-Owen's excess insurer; that Employers' insurance policy afforded primary coverage to Gearhart-Owen for this accident; and that Employers was obligated to defend this claim against Gearhart-Owen and pay any judgment rendered against that defendant up to the $100,000 policy limits.
Employers filed a motion for summary judgment, denying that the comprehensive general liability insurance policy issued by it to Gearhart-Owen covered this particular accident. Initially, the motion was sustained and the suit dismissed as to Employers. However, the trial judge granted a motion for a new trial filed by Gearhart-Owen and Appalachian, reconsidered his ruling on the motion for summary judgment, decided that Employers' policy did afford insurance coverage, and denied the motion for summary judgment. Employers continued in its denial of coverage, resisting the claims of Petrol and the third party demands of Gearhart-Owen and Appalachian.
After trial on the merits, in written reasons for judgment the trial judge, applying the doctrine of res ipso loquitur, concluded that the loss of the oil well was due to the negligence of Gearhart-Owen and that, as damages, Petrol was entitled to recover the cost of drilling a new well less a depreciation factor of 30%.[1] Declining to reconsider its previous ruling on insurance coverage, the trial court held that Employers had breached its legal duty to defend Gearhart-Owen in the proceeding and was liable to third party plaintiffs for attorney fees in the sum of $10,000.
Petrol appealed, asking for an increase in the damage award.
Employers appealed for itself alone, again raising the defense of lack of insurance coverage.
Gearhart-Owen also appealed.[2] Further, Gearhart-Owen and Appalachian answered Employers' appeal, asking for an increase in the attorney fee award to cover legal services rendered in connection with the appeal and for reimbursement of the premium paid for the suspensive appeal bond.

Measure of Damages
Petrol argues that, since the oil well was destroyed, it should have been awarded the *1062 value of the wellcalculated on the basis of future profits anticipated over the production lifespan, amounting to $348,859. Alternatively, Petrol asserted that the trial court should not have deducted any depreciation from the cost of the new well since this depreciation had been taken care of by depletion of the reservoir itself.
Where property has been damaged through the fault of another and legal recourse is sought, the primary objective of the judicial process is to restore the owner of the damaged property, as nearly as feasible, to his status immediately prior to the damaging incident. Consequently, where the thing damaged can be adequately repaired, the proper measure of damages is the cost of restoration. If it is not practical to repair the damaged property, the objective of restoring the injured party to his prior position may be achieved by awarding him the difference in the value of the property before the damage was inflicted and immediately afterwards. If this figure cannot be determined with a reasonable degree of certainty, the damage award should be based upon the cost to replace the damaged property less a depreciation factor. Since the aim in each suit of this nature is to do substantial justice, the particular facts of each case will determine which of the foregoing tests is appropriate to apply. See Schexneider v. United Geophysical Corp., 385 So.2d 533 (La.App. 3rd Cir.1980); Mayer v. McNair Transport, Inc., 384 So.2d 525 (La.App. 2d Cir.1980); Gullatt v. Ashland Oil & Refining Co., 243 So.2d 820 (La.App. 2d Cir.1971).
Here, the oil well could not be repaired since it had been destroyed. Estimates of the difference in value of the well before the accident and afterwards were too speculative to serve as a basis for the damage award. Therefore, the trial judge correctly ruled:
"In this case Petrol is entitled to be placed where it was when the accident occurred. At that time Petrol had a producing oil well with oil reserves in the ground. It no longer has the well but the reserves are still there. Therefore Petrol is entitled to the cost of drilling a new well, less depreciation."
The trial judge's selection of $135,000 as the cost of a new well in 1975 is not contested by any of the parties on appeal. We conclude, however, that he erred in depreciating this entire figure, including drilling costs, rather than just depreciating the physical equipment which was to be installed in connection with the new well. After all, the proper measure of damages would have been the entire cost of the new well except for the fact that, with new equipment, Petrol would be in a better position than before the accidentparticularly in view of the obvious fact that before the explosion it had casing which needed repairing.
To achieve the goal of placing Petrol, as nearly as possible, in the same position as before the accident, we have determined that only the items of physical equipment included in the cost of the new well should be depreciated. Our examination of the exhibit filed in the record detailing the new well cost reveals that approximately 45% of the total consists of cost of new equipment. Of the total cost of $135,000, this amounts to $60,750, which we depreciate by 30% (percentage used by the trial judge, which we consider reasonable), or the sum of $18,225. Using these figures, our computation of damages is as follows:

$ 135,000 cost of new well
 - 18,225 depreciation
_________
 116,775
 × 93.75% Petrol's working interest
_________
109,477
+ 8,482 additional expenses incurred by
_________ Petrol, as found by trial judge
$ 117,959 total damages to be awarded Petrol

Insurance Coverage
At the time of the accident there was in force a comprehensive general liability insurance policy issued by Employers to Gearhart-Owen including, together with other coverage, a limit of $100,000 per occurrence for property damage liability.
Coverage originally extended to all property damage arising out of blasting or explosion, *1063 except for Gearhart-Owen's ammunition manufacturing operation. Endorsement No. 8 eliminated that exclusion.
Employers contends that its policy does not cover this property damage because: (1) Endorsement No. 3 excludes underground operations by the insured in connection with servicing oil wells and (2) Part 1(k) of the policy excludes damage to property in the care, custody and control of the insured, which was allegedly the case here.
Endorsement No. 3 provides in pertinent part:

EXCLUSION

(Underground Resources and Equipment)
It is agreed that with respect to operations performed by or on behalf of the named insured and described in this endorsement:
1. The insurance does not apply to
(a) property damage included within the underground resources and equipment hazard;
(b) the cost of reducing any property included within the underground resources and equipment hazard to physical possession above the surface of the earth or above the surface of any body of water, or to the expense incurred or rendered necessary to prevent or minimize property damage to other property resulting from acts or omissions causing property damage included within the underground resources and equipment hazard.
2. "Underground resources and equipment hazard" includes property damage to any of the following:
(a) oil, gas, water or mineral substances which have not been reduced to physical possession above the surface of the earth or above the surface of any body of water;
(b) any well, hole, formation, strata or area in or through which exploration for or production of any substance is carried on;
(c) any casing, pipe, bit, tool, pump or other drilling or well servicing machinery or equipment located beneath the surface of the earth in any such well or hole or beneath the surface of any body of water.
Description of Operations
Gasoline Recoveryfrom casing head or natural gas
Oil or Gas Well Shooting
Oil or Gas Wellscleaning or swabbing by contractors
Oil or Gas Wellsservicingby contractors
Oil or Gas Wellsdrilling or redrilling, installation or recovery of casing
Oil Lease Operators or Gas Lease Operatorsnatural gas
Gearhart-Owen argues that this exclusion refers only to oil well servicing operations by contractors. Employers asserts, to the contrary, that the exclusion encompasses oil well servicing work both by the insured and its contractors.
The ambiguity of the language of the exclusion set forth in Endorsement No. 3 is patent on its face. The first sentence alludes to "operations performed by or on behalf of the named insured and described in this endorsement." (emphasis added) Yet, the pertinent operation subsequently described in the endorsement is "Oil or Gas Wellsservicingby contractors." (emphasis added)
Recognizing that insurance policies are prepared by the issuing insurance company, the general rule is that, in case of ambiguity, the construction of the policy will be adopted which is most favorable to the insured. Corporation of Roman Catholic Church v. Royal Insurance Co., 158 La. 601, 104 So. 383 (1925); Finn v. Employers Liability Assurance Corporation, 141 So.2d 852 (La.App. 2d Cir.1962). This rule applies with particular force to the interpretation of exclusion provisions in a comprehensive insurance policy. Benton Casing Service, Inc. v. Avemco Insurance Co., 379 So.2d 225 (La.1979).
*1064 Acting within the ambit of these rules of construction, we resolve the apparent ambiguity in this insurance policy in favor of the insured, Gearhart-Owen, and conclude that Endorsement No. 3 under the facts of this case excludes only oil well servicing operations by a contractor for the insured. Since Gearhart-Owen was in this instance performing the work itself, the particular exclusion does not apply.
Another exclusion to coverage under the policy is found in Part 1(k), which provides in pertinent part:
"This insurance does not apply:
(k) to property damage to:
* * * * * *
(3) property in the care, custody or control of the insured, or as to which the insured is for any purpose exercising physical control; ..."
Employers argues that this well was lost because of damage to the casing upon which Gearhart-Owen was working at the time of the explosion and which was in the insured's custody and under its control.
When employed in insurance policies, "care and custody" is an ambiguous term that is subject to differing interpretations according to the circumstances. 70th Street Food Store, Inc. v. Northeastern Fire Ins. Co. of Pa., 408 So.2d 958 (La.App. 2d Cir. 1981).
Dealing with a similar exclusionary clause in Hendrix Electric Co., Inc. v. Casualty Reciprocal Exchange, 297 So.2d 470 (La.App. 2d Cir.1974), we observed:
"[I]t is noted that there is a greater moral hazard as far as the insurance company is concerned in insuring property under the care, custody or control of the insured in the sense of being owned, rented or used by the insured and where there might be some advantage to the insured in falsifying or exaggerating a loss. This reason for the exclusion does not apply with reference to property belonging solely and unconditionally to others as in the instant case."
There is no question but that Gearhart-Owen was in charge of the patching operation. Whether it had custody and control of the casing, within the meaning of the pertinent policy exclusion, is doubtful. However, assuming that it did, we do not agree with the implication of Employers' argument that the damaged property consisted solely of the casing. The damaged property here was Petrol's oil well which was destroyed by the explosion.
There seems to be no serious contention that the oil well itself was in the custody, care or control of Gearhart-Owen at the time of the accident. In fact, the record shows that, although he issued no instructions in connection with the patching operation, Petrol's field superintendent, Dunagin, was present and acting for his employer during the entire time.
Finding that the damaged oil well was not in the care, custody or control of the insured at the time of the accident, this exclusion is deemed to be inapplicable.
In summary, we agree with the trial judge that the general comprehensive liability insurance policy issued by Employers to Gearhart-Owen covered this accident. Under the terms of that contract of insurance, Employers owed Gearhart-Owen a duty to defend this lawsuit and, by failing to defend, breached the contract.[3] As a general rule the insured is entitled to recover from the insurer as damages the expenses, including attorney fees, incurred by him in defending the suit which the insurer unjustifiably refused to defend. Bodi v. Government Employers Insurance Co., 349 So.2d 1327 (La.App. 1st Cir.1977); Pendleton v. Ricca, 232 So.2d 803 (La.App. 4th Cir.1970).
We note, however, that since this suit was for a sum in excess of $100,000, Appalachian also had a duty as Gearhart-Owen's excess or secondary insurer to defend and did, in fact, furnish legal defense *1065 services.[4] In view of that fact, Gearhart-Owen would not be entitled to recover the full attorney fee of $10,000 since, presumably, Appalachian bore its fair share of that expense. Further, contrary to the trial court judgment, Appalachian had no right to recover any portion of this legal expense since Employers did not owe the excess insurer a duty to defend. Consequently, we eliminate Appalachian from the lower court judgment awarding attorney fees and reduce the amount from $10,000 to $5,000.
Employers' duty to defend Gearhart-Owen encompassed the legal representation of the insured on appeal. Since Employers refused to furnish this service, we conclude that Gearhart-Owen is entitled to an additional award of $1,000 for legal services rendered in connection with this appeal, together with the sum of $3,740 representing the premium paid for the suspensive appeal bond.

Conclusion
For the reasons set forth hereinabove, we amend the district court judgment in the following respects:
(1) The second paragraph is recast to provide that "there be judgment in favor of plaintiff, Petrol Industries, Inc., and against the defendants, Gearhart-Owen Industries, Inc. and Employers Casualty Company, in solido, for the sum of $100,000 together with legal interest thereon of 7% per annum from June 7,1976 until paid, and all costs of these proceedings."
(2) A paragraph is added to provide that "there be judgment in favor of plaintiff, Petrol Industries, Inc., and against the defendants, Gearhart-Owen Industries, Inc. and Appalachian Insurance Company,[5] in solido, for the sum of $17,959, together with legal interest thereon of 7% per annum from June 7, 1976 until paid."
(3) The third paragraph is recast to provide that "there be judgment in favor of third party plaintiff, Gearhart-Owen Industries, Inc. and against third party defendant, Employers Casualty Company, for the sum of $9,740."
As thus amended, the trial court judgment is affirmed, with costs of appeal assessed equally to Gearhart-Owen Industries, Inc. and Employers Casualty Company.
NOTES
[1] Judgment was originally rendered in favor of plaintiff, Petrol, and against the defendants, Gearhart-Owen and Employers, in solido, for $85,971.92, together with legal interest of 7% from June 30, 1976 until paid. After it was pointed out to the trial judge in a motion for a new trial that he had erroneously computed the damage award, an amended judgment was signed which increased the award to $97,075.67, with legal interest of 7% from June 7, 1976 until paid.
[2] Gearhart-Owen asserts in its brief on appeal that it appealed simply to prevent execution of the judgment against it. Since it has presented no specification of error directed at the trial court judgment, Gearhart-Owen apparently does not complain of the finding of liability on its part.
[3] Even though the excess insurer rendered a defense under its policy obligation, that does not relieve Employers from liability for damages for breach of its "duty to defend." See annotation Defense by InsurerCoinsurer's Duty, 90 A.L.R.3d 1199.
[4] According to the record, the same attorney represented both Gearhart-Owen and Appalachian.
[5] The insurance policy issued by Appalachian to Gearhart-Owen provided coverage in excess of the primary policy issued by Employers.