UTICA MUTUAL INSURANCE COMPA-
NY, Mutual Marine Office, Inc.

v.

COASTAL MARINE, INC., Hartford
Insurance Company Mid-Continent
Underwriters, Inc.

Civ. A. No. 80–4644.

United States District Court,
E.D. Louisiana.

Feb. 4, 1984.

Donald L. King, Jones, Walker, Wae-
chter, Poitevent, Carrere & Denegre, New
Orleans, La., for plaintiff.

Harvey L. Strayhan, Sessions, Fishman,
Rosenson, Boisfontaine & Nathan, New Or-
leans, La., for Mid-Continent Underwriters,
Inc.

Steven M. Lozes, Lozes & Lozes, New
Orleans, La., for Hartford Ins. Co.

## MEMORANDUM OPINION

MENTZ, District Judge.

The original suit of *Ronald Lee Porter v.
Pipelines, Inc. and Coastal Marine, Inc.*,
No. 74–230, was tried by a jury on August
18, 1975, with a verdict in favor of plaintiff
of $175,500. After the jury found that
both Pipelines and Coastal were negligent,
the Court found, as a matter of law, that
Pipelines, Inc., was entitled to indemnifica-
tion from Coastal Marine. A judgment to
this effect was signed on October 5, 1976,
granting Pipelines, Inc. full indemnification

from Coastal Marine for the amount of the judgment plus maintenance and cure paid to the plaintiff. By a supplemental judgment dated October 14, 1977, the Court added to this judgment, the attorney's fees and expenses of defending the suit. On appeal to the Fifth Circuit Court of Appeals, the judgment of the District Court was affirmed in all respects on December 10, 1981.

The present complaint arises out of the marine insurance coverages of Coastal Marine, Inc. that were in effect on or about December 29, 1973, the date when Porter was insured. At that time, the assured, Coastal Marine, Inc., had policies of marine insurance procured through Mid-Continent Underwriters, Inc. (herein referred to as MCU), which held itself out to be a "managing general agent." Hartford Insurance Company had the "primary layer" of insurance coverage, with limits of $100,000.00. Utica Mutual Insurance Company had the "excess" coverage over $100,000.00.

After the institution of the original suit, Coastal Marine's primary insurer, Hartford Insurance Company, and their attorneys assumed and retained sole control of the defense of the matter for Coastal Marine, Inc. MCU undertook the obligation as representative of the excess insurer (plaintiffs), to keep plaintiffs advised of the progress of and developments in the Ronald L. Porter litigation. Utica Mutual alleges that it was misled by Hartford and MCU that Utica's excess policy would not be involved and that they had no real exposure in the Porter case. Utica alleges that the defendant, Hartford Insurance Company, (a) failed to adequately evaluate and investigate Porter's claim; (b) failed to inform plaintiffs of the seriousness of Porter's injuries and the potential for judgment in excess of the primary policy; (c) failed to advise plaintiffs of the progress and, in fact, of the outcome of the suit; (d) failed in their obligation to attempt to settle within the policy limits; (e) failed to disclose other relevant facts to the plaintiffs; and (f) failed to discharge their obligation to defend, which included the obliga-

tion to appeal the judgment, which their counsel recommended.

Utica also alleges that defendant, Mid-Continent Underwriters, as agent and representative of the plaintiffs: (a) violated its fiduciary duty to the plaintiffs; (b) failed to keep the plaintiffs fully informed of all facts it knew or should have known were material to the plaintiffs; (c) failed to keep itself adequately informed of the facts and circumstances of the case, the progress of the litigation and the possibility of settlement; and (d) actually misled the plaintiffs with regard to the entire matter.

Utica alleges that it did not learn of the severity of the injuries to Ronald Lee Porter or of the seriousness of the liability exposure until after the jury had returned a verdict in favor of Mr. Ronald Lee Porter in the amount of $175,500.00. In order to settle with Ronald Lee Porter and with full reservation of rights against defendants herein, Utica advanced approximately $65,000.00 towards a $165,000.00 settlement with Mr. Porter.

On the other hand, Hartford denies that it breached any duties owed to plaintiffs herein, Utica Mutual and Mutual Marine Office, Inc., its Manager. Hartford suggests that upon receipt of notice of the claim, it promptly began its investigation by statementizing witnesses and forwarding the lawsuit to competent counsel. As periodic status reports were requested from excess carriers' representatives, Mid-Continent Underwriters, Inc., status reports were forwarded to MCU for ultimate transmission to Utica Mutual.

As trial approached, Hartford had received no settlement demands less than $300,000.00 and upon the advice of counsel, trial on the matter was commenced. Excess carriers, Utica Mutual, were advised that trial would be necessary in this case in view of the excessive settlement demand of $300,000.00. After trial on the merits, the jury rendered a verdict of $175,500.00 and found both Pipelines and Coastal negligent.

Excess carriers were notified at the conclusion of trial of the fact that judgment was entered over the amounts of Hart-

ford's policy limits, but that in view of the fact that two defendants had been cast, the judgment was still within the policy limits of Hartford, subject to the final determination of the cross-claim of Pipelines against Coastal.

After Porter refused Hartford's attempts to settle Coastal's liability separately for $87,500.00, Hartford awaited entry of judgment by the Court on the cross-claim issue. The trial court then issued its proposed findings of fact, and after discussing further settlement possibilities with Porter's attorney, counsel for Hartford finally recommended (1) that the case be settled for $164,000.00 subject to the approval of the excess carrier, and (2) that an appeal not be taken, since the settlement amount represented a savings of approximately $35,000.00 over the total judgment, including costs and interest at that time.

Defendant, Mid-Continent Underwriters, Inc., takes the position that it is not obligated in any manner to Utica for the damages sued upon. Further, that when it gratuitously remitted information to plaintiff pertaining to the progress of the Porter litigation, no obligation was assumed or created thereby.

In conclusion, MCU submits that if any entity had an obligation to keep itself apprised of the status of the Porter litigation, it would have been Utica Mutual Insurance Company under its excess policy of insurance. Unfortunately, Utica did not bother to contact the primary insurer or its counsel directly requesting updated status reports subsequent to the trial, although it had been advised that said trial had taken place. MCU claims that this failure of plaintiff to keep itself adequately informed constitutes fault on the part of Utica Mutual, which bars recovery in the premises of this litigation.

The duties of an insurer in Louisiana are outlined in *Cousins v. State Farm Mutual Auto Insurance Co.*, 294 So.2d 272 at 275 (writs refused La.App.1974) as follows:

Our own jurisprudence accords with the majority view that the insurer is the champion of its insured's interests; that the interests of the insured are paramount to those of the insurer, and that the insurer may not gamble with the funds and resources of its policyholders. (citations omitted)

\* \* \* \* \* \*

"The insurer, as a professional defender of lawsuits, is held to a standard higher than that of an unskilled practitioner. What might be ignorance in his instance may be unforgivable oversight of the insurer; what might be neglect in his instance could well constitute bad faith on the part of the insurer. The question is always: 'Did the insurer exercise that degree of skill, judgment, and consideration for the welfare of the insured which it, as a skilled professional defender of lawsuits having sole charge of the investigation, settlement, and trial of the suit may have been expected to utilize?' If it did, there is no problem; it is not liable. If it did not, then a court could easily describe its conduct as being negligent, or as not in accordance with the high duty of good faith which it owed to its insured."

## CONCLUSIONS OF FACT AND LAW

### 1.

As is stated in *Valentine v. Aetna Ins. Co.*, 564 F.2d 292 at 297 (9th Cir.1977), "If the insured purchases excess coverage, he in effect substitutes an excess insurer for himself. It follows that the excess insurer should assume the rights as well as the obligations of the insured in that position." Also, the Court held that "The position of an excess insurer vis-a-vis a primary insurer corresponds to that of the insured to the insurer when only one insurance policy exists."

### 2.

Porter's original suit was for $350,000.00 in damages. Up to the time of trial, the only firm offer of settlement was for $300,-000. Even so, Porter's attorney informed Hartford prior to trial that he would recommend a settlement of $125,000 and that he

had every reason to believe his client would accept such a settlement. Apparently, though, Hartford never responded to this information. After trial, Porter's attorney was authorized to settle for $145,000, but the only response from Hartford was an offer to pay one-half of the $175,500 jury verdict $87,500. However, this would have required Porter to indemnify in the event of a judgment against Coastal.

### 3.

At trial, Mr. Salgado, Senior Adjuster for Plaintiffs, denied receiving a series of letters relative to handling of the case, until after the case had been settled. Medical reports were not furnished by Hartford to MCU or Utica. They were voluminous, and Hartford simply invited them to their office to inspect them. It was stipulated that Exhibits 9–14 of MCU were viewed by Salgado on February 14, 1977.

### 4.

Hartford had placed a $7,500 reserve on this case originally, which had been raised to $25,000.00 on October 18, 1974. As late as January, 1976, the reserve remained at $25,000.00. After Utica retained counsel (no longer relying on MCU), negotiations resulted in a settlement of $164,000, of which Utica put up $64,000.00.

### 5.

The various exhibits show that MCU continually styled itself as "representatives of the excess insurer." A report of Mr. Ferguson (Hartford's manager) to MCU on March 12, 1975, referred to the "usual legal maneuvering" but "very little change in the liability or quantum picture." This was before the trial of August 18, 1975, and he still felt that the case did not have "a great deal of settlement value," but stated the reserve was still $25,000.00. He ended the letter by stating "we will keep you closely advised." This letter, and a letter from Hartford's counsel ‹to MCU stated in essence, "if you would like to look at the file, come by."

### 6.

After trial, Hartford's counsel reported that (a) the Court is strongly of the opinion that Pipelines, Inc. was not negligent, (this was before Judge Gordon ruled in favor of Pipelines on the cross-claim), (b) that "it is possible the Court will require Coastal to indemnify Pipelines", but (c) "I have serious doubts as to whether the Court would find in Pipelines' favor ... in view of the jury's decision" finding both liable.

### 7.

After the Court ruled in favor of Pipelines against Coastal on the indemnity, Hartford's counsel on October 8 and 25th recommended an appeal, but Hartford then chose to settle. Then, on November 30, 1976, Hartford's counsel recommended a figure of $162,500, and then settled for $164,000.

### 8.

■ There was a serious under-evaluation of Porter's claim by Hartford's original counsel, and by its Claims Manager, Mr. Ferguson. Counsel did not appear to explain how the evaluation was arrived at, and while Mr. Ferguson testified as to the lack of settlement negotiations before trial, the letters he had written, and his invitations to "come look at the file," the file itself was not presented. Failing to bring forward evidence that the file and medical reports were fairly evaluated, and in view of the evidence presented by Utica, the Court concludes that Utica has proven by a preponderance of the evidence that it was misled and that Hartford was negligent in not fulfilling the obligations required of it as a primary insurer, in accordance with *Cousins v. State Farm, supra.*

### 9.

■ MCU contends that it was an uncompensated representative of the excess insurer, and therefore his responsibility is enforced "less vigorously" than a paid mandatory. Article 3003 Louisiana Civil Code. Although MCU was not specifically compensated for monitoring Hartford's activities, it can hardly be considered "uncompensated" when it received the commission on the excess policy sold by Utica to Coastal, and had every expectation of receiving renewal premiums on this business. MCU

viewed its duties as only requiring it to forward to Utica what Hartford chose to furnish it. Obviously there was a lack of communication, and the Court feels that if it desired to restrict its duties "as representative of the excess insurer," MCU should have so informed Utica so that other arrangements could have been made. Although invited by Mr. Ferguson to review the file and medical reports, it did not see fit to do so.

10.

 The duty of an agent to exercise "utmost good faith" (see *Bollinger v. Livingston State Bank*, 187 So.2d 784 (La. App. 1st Cir.1966)), would require MCU to at least recommend to Utica that legal counsel of its own evaluate the file, if it chose not to do so itself. When Utica (through Mutual Marine) inquired on December 1, 1975 whether the file had been closed, MCU answered that they anticipated closing the file in 30 days, even though they knew that the jury had awarded $175,500 but the Court had not yet ruled on Pipelines' claim for indemnity. The Court notes that when the indemnity claim was finally ruled on, October 5, 1976, that MCU did not furnish Utica with a copy until February 9, 1977, four months later. The Court finds that MCU was neglectful in fulfilling its duties as an agent or representative of the excess insurer.

11.

The Court finds that Utica was indeed misled, beginning with the fixing of the reserve at only 25% of the primary policy, through the failure to communicate Porter's attorney's $125,000 settlement recommendation before trial, as well as the $145,000 figure after trial, in addition to the various matters mentioned above. The Court further finds that Utica's losses could have been limited to $25,000 had Hartford acted reasonably in response to the proposal of Porter's attorney to recommend a $125,000 settlement. Utica has not shown, however, that Hartford could have reduced Utica's liability to less than $25,-000. Consequently, Utica is only entitled to recover the difference between $164,000 and $125,000, or $39,000.

12.

Judgment will be awarded to Plaintiffs for $39,000 plus the interest and attorney's fees paid by Utica in connection with the settlement, to be paid by defendants in the proportion of two-thirds by Hartford and one-third by MCU.