523 So.2d 926 (1988)
Police Officer and Mrs. John R. LAPER,
v.
BOARD OF COMMISSIONERS OF the PORT OF NEW ORLEANS, Peter Spurney, Floyd Lewis, L.C. Brown, d/b/a Brown's Auto Ranch, United States Fidelity and Guaranty Company, National Union Fire Insurance Company of Pittsburgh, Pa., Federal Insurance Company, and Western World Insurance Company, Inc.
No. CA 8955.
Court of Appeal of Louisiana, Fourth Circuit.
April 12, 1988.
Rehearing Denied May 11, 1988.
John Baus, Jr., Blue, Williams & Buckley, New Orleans, for appellants.
Shelly Hammond Provosty, Sally I. Gaden, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, for appellees.
*927 Before BYRNES, CIACCIO and PLOTKIN, JJ.
CIACCIO, Judge.
First State Insurance Company, (hereinafter referred to as First State) the excess insurer of the various named defendants to this suit, appeals from a judgment of the district court which sustained an exception of no cause of action filed against it by the defendant's primary insurer, United States Fidelity and Guaranty Company (hereinafter referred to as U.S.F. & G.). We affirm the judgment of the district court.
Subsequent to the filing of this appeal, U.S.F. & G. filed a motion to dismiss the appeal. In their motion U.S.F. & G. argues that the appeal is moot because First State has settled the plaintiff's claim against it. We deny the motion to dismiss and consider the merits of the appeal because we find the issue on appeal has not been settled and hence, is not moot.
The sole issue to be resolved in this appeal is whether the primary insurer owed a duty to the excess insurer with regard to the manner in which the primary insurer handled its defense of the claim.
On August 1, 1985 plaintiffs filed suit to recover damages for personal injuries sustained by John Laper while he was engaged in a routine patrol at the site of the Louisiana Worlds Fair.
In January, 1987 U.S.F. & G. settled the plaintiffs' claims for one million dollars which was the limits of its policy. The named defendants: Board of Commissioners of the Port of New Orleans, Peter Spurney, Floyd Lewis and LWE Management Company were dismissed without prejudice but remained third party defendants on the demand of L.C. Brown, who had been a fellow co-defendant in the suit by the Lapers. They were thereafter dismissed as third party defendants in September 1987.
On March 3, 1987 First State filed a third party demand against U.S.F. & G wherein it alleged the negligence and bad faith of the primary insurer in the following respects:
a. Failed and refused to actively defend its various insureds, with full knowledge that this inactivity prejudices the ability of those insureds and the excess carriers to present a defense at trial on the merits;
b. Failed and refused to inform the insureds or the excess carrier of the pendency, developments or the substance of settlement negotiations, including but not limited to a continuing refusal to provide copies of limited releases obtained from plaintiffs and even divulging the amount paid in settlement, and further, actively conspired with the plaintiffs to settle the primary exposure and intentionally leave the insureds and the excess carrier without benefit of a primary defense;
c. Precipitously withdrawn from active defense of the insureds, with knowledge that this would prejudice the excess carrier;
d. Failed and refused to cooperate with and inform the excess carrier of the status of the action, including discovery regarding both medical and liability aspects;
e. Failed and refused to defend the insured on third party demands which remain pending in the litigation;
f. Failed and refused to provide the excess carrier with requested documentation, including but not limited to copies of the primary policy which outlines the extent of coverage provided;
g. Failed and refused to communicate to the excess carrier its knowledge as to the extent of the insured's exposure and other relevant circumstances;
h. Failed to investigate, file and/or prosecute third party demands against culpable and responsible parties;
i. Prejudiced the defense of the insureds and the excess carrier by seeking to leave the plaintiffs responsible for the defense and indemnification of third party demands filed against the insureds, which conflict of interest materially impairs the defense.
j. Placed its own interests above those of the insureds or the excess carrier by, ie., obtaining a full release of its own exposure on better and more conclusive *928 terms than those obtained for the insureds;
k. And, any other actions or omissions taken negligently or in bad faith which may be shown at the time of trial on the merits.
U.S.F. & G. filed an exception of no cause of action on the basis that the insureds had been dismissed from the litigation and no duty was owed by U.S.F. & G. towards First State.
On May 19, 1987 the district court maintained the exception of no cause of action and dismissed the third party demand by First State against U.S.F. & G. First State appealed this decision on July 2, 1987.
First State contends that the well pled allegations of its third party demand, when taken as true, establish a cause of action against U.S.F. & G. in negligence and bad faith which is recognized under Louisiana Law.
The exception of no cause of action is a peremptory exception. La.C.C.P. Art. 927. At the trial of this exception "[N]o evidence may be introduced at any time to support or controvert the objection." La.C. C.P. Art. 931. The court will try the exception on the face of the petition. Darville v. Texaco, Inc., 447 So.2d 473 (La., 1984). The exception will be overruled unless there exists no cause of action under any evidence admissible under the pleadings. Darville v. Texaco, Inc., supra.
A duty to defend flows from the insurer to the insured and no such duty is owed to the excess insurer. See: Cousins v. State Farm Mutual Automobile Insurance Co., 294 So.2d 272 (La.App., 1st Cir., 1974); Petrol Industries Inc. v. Gearhart-Owen Industries, Inc., 424 So.2d 1059 (La. App., 2nd Cir., 1982). The Louisiana Civil Law Treatise: Insurance Law and Practice, McKenzie & Johnson, Section 214 pp. 382-383, states: "The Louisiana cases are unanimous in the conclusion that the primary insurer has no duty to defend the excess insurer." Fusilier v. Dixie Automobile Insurance Co., 238 So.2d 223 (La. App., 3rd Cir., 1970) writ den. 256 La. 897, 240 So.2d 233 (1970); Cooper v. Christensen, 212 So.2d 154 (La.App., 4th Cir., 1968) writ ref. 252 La. 899, 214 So.2d 720 (1968); Lumbermens Mutual Casualty Co. v. Connecticut Fire Insurance Company, 239 So.2d 472 (La.App., 4th Cir., 1970), writ ref. 256 La. 1157, 241 So.2d 255; Petrol Industries v. Gearhart-Owen Industries, supra. As to the possibility of an obligation being owed by a primary insurer to an excess insurer in the settlement of its claim, the Louisiana Civil Law Treatise: Insurance Law and Practice, supra at Section 221, pp. 405-407, states the general rule that:
In keeping with its conclusion that a primary insurer has no obligation to defend an excess insurer, Louisiana jurisprudence has not recognized any obligation owed by a primary insurer to an excess insurer in the settlement of claims. Futch v. Fidelity & Casualty Co., 246 La. 688, 166 So.2d 274 (1964). See also: American Home Assurance Company v. Commercial Union Assurance Co., 379 So.2d 757 (La.App., 4th Cir., 1979) writ den. 383 So.2d 23 (1980), cert. den. 449 U.S. 871, 101 S.Ct. 211, 66 L.Ed.2d 92 (1980); Gasquet v. Commercial Union Ins. Co., 391 So.2d 466 (La. App., 4th Cir., 1980) writ den. 396 So.2d 921 (1981).
Although appellant relies upon two federal district court decisions in support of its position that the primary insurer owes a duty to the excess insurer, we find these decisions to be contrary to the established jurisprudence of this state and for this reason, we refuse to follow them. Insurance Company of North America v. Home Insurance Co., 644 F.Supp. 359 (E.D.La.1986); Utica Mutual Insurance Co. v. Coastal Marine, Inc., 578 F.Supp. 1376 (E.D.La.1984).
The allegations of the third party petition, taken as true, fail to state a cause of action recognizable under the laws of this state.
For these reasons the trial court correctly maintained the exception of no cause of action filed by third party defendant, U.S. F. & G.
*929 Accordingly, the judgment of the trial court maintaining the peremptory exception of no cause of action is affirmed.
AFFIRMED.
PLOTKIN, J., dissents with reasons.
PLOTKIN, Judge, dissents with reasons.
I respectfully dissent and would reverse the granting of the exception of no cause of action dismissing First State Insurance Co.'s third party claim against U.S.F. & G.
The majority posits the question restrictively, as whether the primary insurer owed a duty to the excess insurer concerning the manner in which the primary insurer handled the defense of the claim. It answers the question simplistically by concluding that the primary insurer owes the insured the duty to defend the claim, but that no duty to defend or settle the claim is owed by the primary to the excess insurer.
The question of the various duties and rights owed by primary and excess insurer carriers to one other has never been addressed by our Supreme Court.
Appellant First State alleges specifically that the primary carrier's obligations are more extensive than a narrow duty to defend or settle the claim. It avers that the primary carrier in this case acted negligently and with intentional bad faith by conspiring with the plaintiff, actively suppressing information and documents that the excess carrier should have received, and engaging in self dealing and conflict of interest violations, causing it excessive, unreasonable damages and costs.
An analysis of the Louisiana jurisprudence and commentaries relied upon by the majority reveals that the law of this state does not support its holding.
In Cooper v. Christensen, 212 So.2d 154 (La.App. 4th Cir.1968), the plaintiff sued the primary and excess insurers when a car was driven through a wall of her home. The excess sued the primary contending that the primary should undertake the cost of the complete defense. The court held that because the possibility existed that the judgment would exceed the primary's limits, the excess must defend itself at its own cost.
Lumbermens Mutual Casualty Co. v. Connecticut Fire Ins. Co., 239 So.2d 472 (La.App. 4th Cir.1970) involved a claim by the excess insurer against the primary insurer for the cost of excess carrier defense of a tort suit. The issue was whether the primary was owed a defense as an omnibus insurer, under the terms of the policy. The court held that neither insurer affords insurance to the other and therefore the excess was not entitled to the cost of defense.
In Fusilier v. Dixie Automobile Insurance Co., 238 So.2d 223 (La.App. 3d Cir. 1970), the excess carrier brought a claim against the primary for costs of defense to the defendant. The court held that "the excess insurer had an interest in defending this suit for its own protection, since the claim was for more than the limits of the primary insurance policy."
Cousins v. State Farm Mutual Automobile Insurance Co., 294 So.2d 272 (La.App. 1st Cir.1974) was an action brought by the defendant-insured against his insurer only, filed after the insurer refused to settle within the policy limits and an excess judgment had been rendered. The court held, based on the evidence, that the insurer was not negligent or in bad faith in refusing to compromise nor guilty of bad faith in failing to keep the insureds fully informed of the offers of compromise. The case did not involve litigation between a primary and excess insurance carrier.
The most recent Louisiana case on this issue, Petrol Industries v. Gearhart-Owen Industries, 424 So.2d 1059 (La.App. 2d Cir. 1982), involved a claim by the insured against the primary and excess carriers for reimbursement of expenses and attorney fees for failure to defend the insured. The court held that both insurers had a duty to defend the insured, but concluded in a one-line, unsupported statement that "Employers (the primary) did not owe the excess insurer a duty to defend."
The majority's decisionbased on a single sentence in one case unsupported by authorityis, in my opinion, imprecise, fallacious *930 and nonstandard. The conclusion that, as a general principle of law, a primary carrier does not owe the excess carrier any duty to defend, encourages misconduct between two profit organizations, which could lead to economic behaviors harmful to the insured. Such a rule could also create uncertainty and instablity between insurance carriers and the public. The majority fails to consider that there are many components to the relationship between insurance carriers.
This case, unlike any prior Louisiana case, involves charges of negligence, bad faith and other serious allegations of misconduct by the primary insurer, to the direct detriment of the excess insurer. However, the two federal cases cited by the plaintiff are comparable to the case at hand on the broader issues of duty and liability between carriers.
In Utica Mutual Insurance Co. v. Coastal Marine, Inc., 578 F.Supp. 1376 (E.D.La.1984), the excess insurer sued the primary insurer and the insurance agent-broker claiming it was misled by the primary insurer for undervaluation of the claim and negligent failure to inform it of plaintiff's settlement offer. The court correctly held the primary liable and stated the primary's first duty was to the excess insurer, because as found in Valentine v. Aetna Insurance Co., 564 F.2d 292, 297 (9th Cir.1977):
"If the insured purchases excess coverage, he in effect substitutes an excess insurer for himself. It follows that the excess insurer should assume the rights as well as the obligations of the insured in that position."
That court also held that "[t]he position of an excess insurer vis-a-vis a primary insurer corresponds to that of the insured to the insurer when only one insurance policy exists." Id. That duty has been described as follows:
Our own jurisprudence accords with the majority view that the insurer is the champion of its insured's interests; that the interests of the insured are paramount to those of the insurer and that the insurer may not gamble with the funds and resources of its policyholders. (citations omitted).
The insurer, as a professional defender of lawsuits, is held to a standard higher than that of an unskilled practitioner. What might be ignorance in his instance may be unforgivable oversight of the insurer; what might be neglect in his instance could well constitute bad faith on the part of the insurer. The question is always: "Did the insurer exercise that degree of skill, judgment, and consideration for the welfare of the insured which it, as a skilled professional defender of lawsuits having sole charge of the investigation, settlement, and trial of the suit, may have been expected to utilize?" If it did there is no problem; it is not liable. If it did not, then a court could easily describe its conduct as being negligent, or as not in accordance with the high duty of good faith which it owed to its insured.
Cousins, supra at 275.
In Insurance Co. of North America v. Home Insurance Co., 644 F.Supp 359 (E.D. La.1986), the court held the primary insurance carrier liable to the excess carrier for negligence in failing to communicate the plaintiff's settlement offer to the excess insurer and for bad faith in failing to settle the claim. The court annunciated some of the duties and rights between excess and primary carriers as follows:
Home (primary) owed a duty to INA (excess) to act reasonably and in good faith, just as if there were no excess insurer. Thus, INA stands in the same position as the insured. "The insurer is bound to a competent defense of the insured and is liable to the insured for any damages sustained as a result of the breach of that obligation." (Citation omitted.) This duty is sometimes evaluated in terms of "bad faith"; sometimes in terms of "negligence"; and sometimes the two concepts are blurred. (Citation omitted.) A determination of what constitutes bad faith or negligence depends upon the facts and circumstances of each case. (Citations omitted.)
*931 The purpose of the legal system is to modify behavior by inducing individuals and institutions to conduct their affairs in a manner they would not choose but for incentives or penalties. Jurisprudence is one method to regulate behavior.
Insurance companies are profit-oriented businesses. They insure virtually every individual and institution against risks of loss. A simplistic generic inexact "no duty" rule between primary and excess insurance carriers encourages misconduct, disregard and misfeasance. A policy that defines the duties and liabilities promotes stability and positive economics.
I conclude that a primary insurer owes to the excess insurer the same duty it owes to the insured, which includes the duties of acting reasonably and in good faith and of exercising ordinary care to fully inform the excess carrier of settlement negotiations and final compromises. The primary also should disclose to the excess insurer relevant information, as well as provide reasonable cooperation in matters which will affect the excess carrier.
Appellant's allegations are comprehensive. They include claims of negligence, bad faith and fraudulent misconduct by the primary carrier. They clearly plead a cause of action, which requires a reversal and a remand for trial.