## TWIN CITY FIRE INSURANCE COMPANY

v.

## CNA INSURANCE COMPANY.

Civ. A. No. 86–1903.

United States District Court,
W.D. Louisiana,
Shreveport Division.

Nov. 9, 1988.

Patrick A. Juneau, Kathleen F. Drew, Juneau, Judice, Hill & Adley, Lafayette, La., for plaintiff.

John I. Hulse, IV, Hulse, Nelson & Wanek, New Orleans, La., Alex F. Smith, Jr., Mayer, Smith & Roberts, Shreveport, La., for defendant.

### MEMORANDUM RULING

STAGG, Chief Judge.

Twin City Fire Insurance Company (hereinafter, "Twin City"), has the excess insurance carrier for Arnold Pipe and Supply Company, Ltd. (hereinafter, "Arnold Pipe"), has filed this "bad faith action" against Arnold Pipe's primary carrier, CNA Insurance Company (hereinafter, "CNA"), seeking moneys paid together with legal interest, penalties and attorney's fees. The money sought to be recovered was paid as the result of a judgment entered against Arnold Pipe on November 13, 1985 which triggered the excess insurance coverage. Twin City predicates this action on an alleged duty owed by CNA as primary carrier for Arnold Pipe to Twin City. It is alleged that CNA breached its duty to Twin City in the following respects:

(1) Failure to keep the excess carrier apprised of the progress and developments of the underlying lawsuit;

(2) Failure properly to evaluate the underlying lawsuit;

(3) Failure to settle the underlying lawsuit within CNA's policy limits, despite the opportunity to do so;

(4) Failure to negotiate settlement of the claim in good faith.

Presently before the court is CNA's motion to dismiss on the ground that a primary carrier owes no duty to the excess carrier.

## ANALYSIS

■ As agreed by the parties in the pre-trial order and as posed by CNA's instant motion, the first issue that must be addressed is whether a primary insurer owes any duty to the excess carrier with regard to settlement options available to the primary insurer. The only Louisiana court to address this precise issue has found that the primary carrier owes *no duty* to the excess carrier. In *Laper v. Board of Commissioners*, 523 So.2d 926 (La.App. 4th Cir.) *writ. denied*, 531 So.2d 275 (La.1988), the excess insurer filed a third party demand against the primary carrier alleging negligence and bad faith. More specifically, the excess carrier contended, *inter alia*, that the primary carrier: (1) failed to inform the insureds or the excess carrier of the pendency, developments or substance of settlement negotiations; (2) failed to cooperate with and inform the excess carrier of the status of the action; (3) failed to communicate to the excess carrier its knowledge as to the extent of the insureds' exposure; and (4) precipitously withdrew from active defense of the insureds with knowledge that this would prejudice the excess carrier. *Id.* at 927. The court held that no cause of action existed:

A duty to defend flows from the insurer to the insured and no such duty is owed to the excess insurer. [Citations omitted.] *The Louisiana Civil Law Treatise: Insurance Law and Practice*, McKenzie and Johnson, § 214 at 382–83, states: 'The Louisiana cases are unanimous in the conclusion that the primary insurer has no duty to defend the excess insurer.' [Citations omitted.] As to the possibility of an obligation being owed by a primary insurer to an excess insurer in the settlement of its claim, *The Louisiana Civil Law Treatise: Insurance Law and Practice, supra,* at 221, states the general rule that:

'In keeping with its conclusion that a primary insurer has no obligation to defend an excess insurer, Louisiana jurisprudence has not recognized any obligation owed by a primary insurer to

an excess insurer in the settlement of claims.'

*Id.* at 928.

The dissent in *Laper* endeavored to distinguish the cases relied upon by the majority on the basis that those cases did not involve an excess carrier who had allegedly acted with intentional bad faith. *Id.* at 929. The dissent, in rejecting the majority's holding, noted that no Louisiana Supreme Court case had ever addressed the issue. The dissent, however, chose to rely on two federal district court cases wherein the primary carrier was held to owe a duty of good faith to the excess carrier. *See, Insurance Company of North America v. Home Insurance Company*, 644 F.Supp. 359 (E.D.La.1986) and *Utica Mutual Insurance Company v. Coastal Marine, Inc.*, 578 F.Supp. 1376 (E.D.La.1984). Interestingly, neither *Utica Mutual* nor *Insurance of North America* rely on Louisiana jurisprudence to support their holdings regarding the duty of a primary carrier to the excess carrier.

In a case decided before *Laper*, the excess insurer alleged that the primary insurer had "arbitrarily, capriciously and in bad faith refused to settle the case within its primary policy limits exposing ... the excess insurer to liability." *Pacific Employers Insurance Company v. United General Insurance Company*, 664 F.Supp. 1022 (W.D.La.1987). The court in *Pacific Employers* found that Louisiana jurisprudence did not support a cause of action by an excess carrier against the primary carrier for failing to settle in good faith:

We reiterate that no Louisiana court has yet considered whether there is any basis under Louisiana law for recovery of damages by an excess insurer based upon the conduct of the primary insurer in not settling the case within the limits of the primary coverage. But, the jurisprudence is explicit that the excess insurer is only entitled to credit for the primary coverage and has no right to prevent the primary insurer from settling its liability for less than the primary limits nor to recoup any payments which the excess insurer is required to make. [Ci-

tations omitted.] While these cases do not specifically discuss whether the primary insurer holds any settlement duty to the excess insurer similar to that which is owed to the insured, the holdings are clearly inconsistent with such a duty.

*Id.* at 1023–24.

Recognizing its role as a court sitting in diversity jurisdiction, the court held further:

Following our ancient declaration that *Erie* bind us, the destiny of the present determination must rest upon the rationale of the Louisiana cases cited in the preceding paragraph. Consequently, the holding of the distinguished Federal District Judge in *"Utica"* does not detract from *Erie's* command that matters of state law are to be determined by state courts.

*Id.* at 1024.

The author of *Utica*, in a post–*Laper* decision, declined to follow the reasoning of *Pacific Employers* and *Laper*. *National Union Fire Insurance Company of Pittsburgh, Pa. v. Liberty Mutual Insurance Company*, 696 F.Supp. 1099 (E.D.La.1988) (unpublished but available in Westlaw at 1988 W.L. 92028). The court in *National Union* found no Louisiana jurisprudence to support its conclusion that "the Louisiana Supreme Court would follow the rationale set forth in Judge Plotkin's dissenting opinion in *Laper*, and hold that under Louisiana law a primary carrier owes the duty to the excess carrier to act reasonably and in good faith in handling the defense of their mutual insured."

This court respectfully declines to follow *Utica* and its progeny. *Utica* relies not on Louisiana law but on a Ninth Circuit case interpreting California law. *See, Valentine v. Aetna Insurance Company*, 564 F.2d 292, 297 (9th Cir.1977). The one Louisiana case, *Laper, supra*, to squarely address the issue has held that the primary carrier owes no duty to the excess carrier to settle in good faith. *Laper* relies on a history of Louisiana jurisprudence that, though not precisely on point, is certainly inconsistent with such a duty. In *West v.*

*American Telegraph and Telephone Company*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940), the Supreme Court held that:

An intermediate appellate state court ... is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*Accord, Seeney v. Citgo Petroleum Corp.*, 848 F.2d 664, 666 (5th Cir.1988). In fact, intermediate state appellate courts "are controlling, absent strong indication that the Supreme Court of Louisiana would have decided them differently." *Scarborough v. Northern Assurance Company of America*, 718 F.2d 130, 136 (5th Cir.1983). Short of Judge Plotkin's dissent, which relied on two federal court cases which in turn were relying on a Ninth Circuit case, there is no indication—much less a strong indication, that the Louisiana Supreme Court would have decided *Laper* differently. This court, like the court in *Pacific Employers*, is *Erie* bound to follow *Laper*.

■ Twin City makes an effort to distinguish *Laper* and the cases relied upon in *Laper* by pointing out that they all involved situations where the excess carrier was a named defendant or third party defendant. Twin City argues that because it did not have notice of the underlying suit that the reasoning and holdings in the cited cases are inapposite. Twin City further submits that when a primary carrier undertakes to defend a suit and knows the excess carrier has no knowledge of the suit, the primary carrier likewise owes a duty to defend the excess carrier. The court rejects this argument for several reasons.

First, Twin City's theory places a duty upon the primary carrier to notify the excess carrier about the underlying litigation. In *Laper*, the excess carrier complained, *inter alia*, that the primary carrier had failed to inform the excess carrier of the pendency, developments or substance of settlement negotiations and failed to keep the excess carrier abreast of developments in the case. 523 So.2d at 927. Clearly, Twin City's claim is closely akin to that presented and rejected in *Laper*.

**313**

Second, the holdings of *Laper* and the cases cited therein are in no way conditioned upon the excess carrier having notice of the suit against their mutual insured. Similarly, the cases finding that a duty exists rely upon the reasoning in *Valentine* rather than whether the excess carrier has knowledge of the action against its insured. Finally, even if *Laper* and the cases relied on therein are distinguishable, Twin City has provided no jurisprudential authority for its novel position. The ultimate issue presented by this case, as agreed to by the parties in the pretrial order, is whether any duty at all is owed by the primary carrier to the excess carrier to settle and defend in good faith. The only Louisiana case to address the issue has found that no duty exists. This court is *Erie* bound to follow that holding.

Accordingly, the motion to dismiss filed by CNA shall be GRANTED.

An Order in support of this Memorandum Ruling shall issue herewith.

### ORDER

Based upon the reasons enumerated in the foregoing Memorandum Ruling,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the motion to dismiss filed on behalf of CNA Insurance Company is GRANTED and the action dismissed at plaintiff's costs.