Thomas H. BERGMAN, Trustee, and United Department Stores Co. No. 1, Plaintiffs–Appellants,

v.

The NEW ENGLAND INSURANCE COMPANY, Defendant–Appellee.

No. 88–3196.

United States Court of Appeals, Fifth Circuit.

May 12, 1989.

James F. Willeford, Diane K. Zink, Ryan & Willeford, New Orleans, La., for plaintiffs-appellants.

Francis H. Brown, William S. Penick, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, La., for defendant-appellee.

Before POLITZ, GARWOOD, and SMITH, Circuit Judges.

POLITZ, Circuit Judge:

In this Louisiana diversity jurisdiction case the district court granted summary judgment to New England Insurance Company, the malpractice insurer of attorney J.B. Kiefer. New England was sued by Thomas H. Bergman and United Department Stores Company No. 1 (United) for alleged breach of contract and malpractice by Kiefer. Finding no attorney-client relationship extant between Kiefer and appellants and no basis to hold Kiefer liable to a non-client, we affirm.

*Background*

In late 1984 Anthony Nicholson, president of Nicholson Management and Consultants, Inc., a Florida corporation, entered into negotiations for the purchase of properties in Orleans Parish, Louisiana, known as Orleans East Apartments, which were owned by Bergman, as trustee, and United, an Ohio corporation, represented by Harvey Bergman, father of Thomas H. Bergman. Thomas H. Bergman is an attorney licensed to practice in Ohio. For valid tax reasons it was important to the vendors that the sale be consummated on or before December 31, 1984. Bergman and United retained J. Joseph Blotner as their attorney in the transaction. As a result of his schedule and the necessity of concluding the matter by the end of the year, Blotner associated Raoul P. Seré, a partner in the law firm of Lancaster & Seré, to assist him with the preparation of the documents needed to consummate a credit sale transaction with the requisite security portfolio.

Nicholson retained Kiefer to represent his interest. As the matter progressed Kiefer took the lead in drafting the required instruments. The three attorneys agreed that they would share both the attorneys' fee paid by the vendors and the commission on the title insurance premiums to be paid by the vendee. The latter never came to fruition because Nicholson Management never purchased the title insurance, but the former was equally divided between counsel.

On December 27, 1984 the attorneys met to draft the instruments. Then on December 28, 1984 the Bergmans and their attorneys Blotner and Seré met in New Orleans with Nicholson and Kiefer, not merely to execute the documents, but to continue active negotiations. The summary judgment evidence reflects that the parties examined the documents line by line during the day and late into the evening, editing and making many substantive changes. At some point in this process Nicholson determined to take title in the name of his management company, precipitating the need for a formal resolution of Nicholson Management authorizing Nicholson to sign the credit sale deed, mortgage, promissory notes and other instruments involved. Nicholson gave assurances that he would get such a resolution upon his return to Florida; Kiefer echoed that the resolution would be furnished. Seré advised his clients that the sale could be consummated and the credit deed could be recorded by December 31, 1984, in order to preserve tax benefits, and the corporate resolution could be attached and recorded thereafter.

At some point late in the evening of December 28, 1984 the parties hit an impasse. In the hope that the transaction could be put back on track, Nicholson signed the instruments and left them with Seré who was to serve as notary. The parties came to a final agreement the next day and the instruments were executed by the Bergmans on December 30, 1984. The credit deed was recorded on December 31, 1984.

The sale to Nicholson Management was for $4,000,000, payable $25,000 in cash,

$475,000 by a promissory note due in 90 days, plus a second promissory note for $3,500,000 payable in 180 varying monthly installments. The sale was made subject to a pre-existing mortgage in favor of The Mutual Life Insurance Company of New York. The two promissory notes were secured by a vendor's privilege and special mortgage on the subject property, and were otherwise secured in a manner not relevant to our ruling herein.

The corporate resolution by Nicholson Management, authorizing the execution of the credit sale deed and promissory notes, was never furnished to Blotner and Seré, and it never became a part of the credit sale deed filing. As a consequence, in 1986 when Nicholson Management defaulted Bergman and United were not able to foreclose on the property *via executiva,* the quick and abbreviated procedure provided by Louisiana law for mortgage foreclosures, but were required to follow the slower, more laborious, and more expensive proceedings *via ordinaria.* The executory procedure requires that all relevant documents in a mortgage foreclosure be in authentic form. Without the resolution of Nicholson Management, the vendee-mortgagee, the documentary record was incomplete as to the authority of Nicholson to bind Nicholson Management, making it imperative that ordinary lawsuit procedures be employed where proof of such could be developed in the course of litigation.

Appellants contend that their inability to use the executory process damaged them because during the delay the value of the mortgaged property markedly decreased. It is this loss which they seek to recover from New England Insurance Company, as the malpractice insurer of Kiefer.

New England moved for summary judgment, contending that Kiefer was never in an attorney-client relationship with appellants, and appellants were not third-party beneficiaries to any contractual relationship between Kiefer, Blotner, and Seré. The district court held that Kiefer was not appellants' attorney and no stipulation *pour autri* existed. On appeal Bergman and United reurge that Kiefer was their attorney and, as such, that he breached his duties to them; further, that he breached a contractual obligation to furnish the corporate resolution; and, finally, that by virtue of the intervening decision in *Shaw v. Everett,* even as a non-client of Kiefer they were entitled to recover because he breached his professional obligations to the courts and the public.

*Analysis*

We review the grant of a motion for summary judgment under Fed.R.Civ.P. 56(c), which states that summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact...." The summary judgment evidence reflects factual disputes but, viewing the evidence most favorable to appellants, we find no genuine dispute as to any fact material to disposition of this case. As we seek "to determine which factual issues are material, we must first examine the substantive law that governs the case, and to determine if an issue of material fact is genuine, we must then decide whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bache v. American Tel. & Tel.,* 840 F.2d 283, 287 (5th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 219, 102 L.Ed.2d 210 (1988) (citation and quotation omitted).

The threshold determination is whether Kiefer had an attorney-client relationship with Bergman and United. Traditionally, a legal malpractice action requires the establishment of an attorney-client relationship, negligence on the part of the attorney, or his intentional wrongdoing, and the consequential loss by the client. *Ramp v. St. Paul Fire & Marine Ins. Co.,* 263 La. 774, 269 So.2d 239 (1972); *Dier v. Hamilton,* 501 So.2d 1059 (La.App.1987); *Evans v. Detweiler,* 466 So.2d 800 (La.App.1985); *Lowe v. Continental Ins. Co.,* 437 So.2d 925 (La.App.1983), *cert. denied,* 442 So.2d 460 (La.1983), *cert. denied,* 466 U.S. 942, 104 S.Ct. 1924, 80 L.Ed.2d 470 (1984).

Under Louisiana law, an express agreement between the parties is required in order to establish an attorney-client relationship. As one intermediate appellate court pointedly observed:

The legal relationship of attorney and client is purely contractual and results only from the mutual agreement and understanding of the parties concerned. Such relationship is based only upon the clear and express agreement of the parties as to the nature of the work to be undertaken by the attorney and the compensation which the client agrees to pay therefor.... The duty to defend or represent imposes upon a member of the legal profession grave responsibilities which he may accept or decline at his election and for whatever reasons he chooses. An obligation of such gravity and magnitude may not be involuntarily thrust upon an attorney-at-law....

*Delta Equipment & Constr. Co. v. Royal Indem. Co.*, 186 So.2d 454, 458 (La.App. 1966). This decision was cited approvingly by the Louisiana Supreme Court in *Grand Isle Campsites, Inc. v. Cheek*, 262 La. 5, 262 So.2d 350 (1972).

Kiefer represented Nicholson and his corporation. There is no suggestion that he expressly undertook the representation of either or both appellants. Neither so contends. Counsel argues, however, that the circumstances were such that Kiefer became obligated and responsible to appellants, as their attorney, because: (1) he undertook to prepare the various documents required in the transaction; (2) his secretary sent one document directly to Bergman with return instructions; (3) he "promised" to secure the resolution from Nicholson Management; and (4) he shared in the fee paid by the appellants. We are not persuaded.

It is not unusual for the attorney representing one party to prepare the instruments which are to be signed by all parties. It would stun the practicing bar to learn that when an attorney did so, he or she became accountable as the attorney for all parties-signatory. When time is of the essence, as it was in this case because of appellants' tax considerations, it is not unusual for an attorney to take legitimate shortcuts and avoid multiple handling of papers. The summary judgment evidence reflects a level of cooperation between the attorneys, as they sought to put this matter together rapidly, fostering informalities. This act by Kiefer's staff did not create the attorney-client relationship with appellants. Nor did his statement about getting the resolution, on the heels of Nicholson voicing his intention to provide it. Nicholson later changed his mind and instructed Kiefer that the resolution was not to be furnished to appellants' attorneys. Finally, albeit unusual, the fact that the attorneys agreed to pool and share equally in the fee paid by the vendors-appellants and the commissions to be earned on the title insurance premiums to be paid by vendee-appellee did not create additional attorney-client relationships for the attorneys. Each continued to represent only his original clients.

■ Appellants alternatively advance the recent decision in *Shaw v. Everett*, an unpublished opinion by Louisiana's Fourth Circuit Court of Appeal, issued March 10, 1988 in its docket number CA–8615, *cert. denied*, 531 So.2d 275 (La.1988), for the proposition that a non-client has a cause of action against an attorney for the negligent breach of a professional obligation that the attorney owes to the court, the profession, and the public. We find neither this authority nor appellants' accompanying argument persuasive.

A majority of jurisdictions follow the view expressed by the Supreme Court in *National Savings Bank v. Ward*, 100 U.S. (10 Otto) 195, 25 L.Ed. 621 (1880), that absent fraud, collusion, or privity of contract, an attorney cannot be held liable to a non-client for malpractice. In more recent times the requirement of privity of contract has been relaxed and two conceptual modes have been employed: (1) the balancing-of-factors theory, and (2) the third-party-beneficiary theory. *See* Anno. 61 A.L.R. 4th 443.

Louisiana, following its civilian tradition, joins the majority view. In *Olympia Roofing Co. v. City of New Orleans*, 288 So.2d 670 (La.App.), *cert. denied*, 292 So.2d 244 (La.1974), a Louisiana appellate court confronted facts very similar to those at bar. In *Olympia* a purchaser of property sued the attorney for a city committee which had sold it property. The sale had to be ratified by the city because the committee went beyond its authority in executing the

deed. The offended purchaser contended that the attorney for the committee was negligent for not advising that the city had to ratify the sale, and that he breached a duty to the purchaser when the city's refusal to ratify the sale resulted in a defective title. After citing *Delta Equipment* and *Grand Isle Campsites*, the *Olympia* court held that the attorney "did not owe [the purchaser] an obligation that his principal would transfer a valid title to the property," *id.* at 672, nor did the attorney warrant the committee's capacity to convey a valid title. *See also* our recent opinion in *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1123 (5th Cir.1988).

The holding and thrust of *Olympia* is clear absent fraud or collusive conduct a lawyer is not answerable to a non-client for malpractice. Appellants maintain that *Shaw v. Everett* changes the course of Louisiana law. We do not agree. The *Shaw* decision stands alone. It may be considered fact specific or *sui generis*. Either way, it represents neither a controlling nor dispositive Louisiana holding.

According to the allegations of the petition, the attorney in *Shaw* was guilty of intentional misconduct. He misled the court into signing an order which authorized him to withdraw a note which had been placed in the registry of the court pursuant to a concursus proceeding, he caused the note to be paid and the proceeds distributed to persons not entitled to same, and he returned the note marked "paid" to the registry of the court. The plaintiff in *Shaw* alleged ownership of the note and alleged that the defendant attorney was fully aware of her ownership interest.

These allegations are not of negligent acts by an attorney but, rather, reflect calculated, intentional culpability. If the allegations are proven to be true, the defendant-attorney will not be held accountable because he is an attorney, he will be held accountable because he subjected the plaintiff to intentional, tortious conduct. The unpublished *Shaw* decision casts more heat than light on the case before us.

### Conclusion

We conclude that Kiefer was not in an attorney-client relationship with either Bergman or United at any time during the Bergman–United/Nicholson–Nicholson Management transaction. Accordingly, he cannot be held accountable for attorney malpractice for a negligent act. We further conclude that there is no basis for appellants to claim a third-party beneficiary status as a consequence of any contractual relationship between Kiefer on one hand, and Blotner and Seré on the other. Finally, we conclude that the summary judgment record contains no evidence upon which to hold Kiefer liable as a lawyer to a non-client.

The judgment of the district court is AFFIRMED.