ST. PAUL INSURANCE COMPANY OF BELLAIRE, TEXAS, Plaintiff–Appellant,

v.

AFIA WORLDWIDE INSURANCE COMPANY, Insurance Company of North America, et al., Defendants–Appellees.

No. 89–3554.

United States Court of Appeals, Fifth Circuit.

Aug. 7, 1991.

James D. Carriere, Habans, Bologna & Carriere, New Orleans, La., Risley C. Triche, Triche, Sternfels & Nail, Napoleonville, La., for plaintiff-appellant.

James M. Garner, Dermot S. McGlinchey, Eve Barrie Masinter, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, La., for AFIA & INA.

W.K. Christovich, New Orleans, La., for Deutsch, Kerrigan.

Before BROWN, JOHNSON, and BARKSDALE, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

### Introduction

This is a suit by an excess liability insurance carrier, St. Paul Insurance Company of Bellaire, Texas (Excess Insurer), against the primary liability insurance carrier, AFIA Insurance Company (Primary Insurer),[1] and Deutsch, Kerrigan, and Stiles law firm (Deutsch), attorneys for Primary Insurer. Excess Insurer claims that Primary Insurer and Deutsch negligently and in bad faith failed to settle the claims of William Warnes against Offshore Logistics, Inc., the carriers' common insured (Insured), resulting in a large judgment and subsequent recovery for Warnes. Excess Insurer's action against Primary Insurer is based on (i) a duty it asserts Primary Insurer owes to it in its representation of the Insured, and (ii) Excess Insurer's position as subrogee to the Insured's rights by virtue of payment Excess Insurer made as a contribution to the Insured's settlement with Warnes. Its claim against Deutsch is premised on a similar theory. After a hearing, the trial court granted motions filed by Primary Insurer and Deutsch to dismiss the case pursuant to F.R.Civ.P. 12(b, c) or alternatively under F.R.Civ.P. 56(c).

---

**1.** Insurance Company of North America, AFIA's    successor, is also a named defendant.

As to the merits, we agree that Excess Insurer's suit against Deutsch based upon either a third-party beneficiary theory or a claimed duty between primary and excess insurers may not be maintained and affirm that portion of the trial court's judgment. However, since the trial court took its action, the Louisiana Supreme Court has recognized that an excess insurer may become subrogated to an insured's rights against its primary insurer to assert bad faith failure to settle a claim, which ultimately results in the excess insurer's making a payment on behalf of the insured. *See Great Southwest Fire Insur. Co. v. CNA Insurance Cos.*, 557 So.2d 966 (La.1990). The trial court's action, which predated *Great Southwest*, is suspect under the Louisiana Court's application of subrogation in this context. Therefore, concluding that the trial court dismissed Primary Insurer on summary judgment, we reverse and remand the case to the district court for consideration in light of *Great Southwest*.

## I. How It All Began

### (a) The Warnes Litigation

Warnes is an Australian engineer who brought suit under the Jones Act and general maritime law against Offshore for injuries he sustained in June 1980 while working aboard the M/V VOLUNTEER, which was being operated by Offshore in the Atlantic Ocean off the coast of Brazil. Primary Insurer, which afforded the Insured $1 million in coverage, appointed Deutsch to represent the Insured in the suit. The parties made several offers to compromise the suit in the range of $200,000 to $450,000, all of which were ultimately rejected, and the case proceeded to trial on November 13, 1984. Excess Insurer, which afforded Offshore $9 million in coverage for judgments or compromises in excess of the $1 million underlying policy, alleges that it was not notified that the Insured was being sued until the next day, November 14, 1984. At that time, Excess Insurer reserved its rights to deny coverage to the Insured and advised Primary Insurer to settle the case within the primary policy limits. Excess Insurer further alleges that during the trial Primary Insurer and its counsel Deutsch rejected an offer to settle the suit for $335,000, and it did so without informing Offshore of this offer and rejection.

In December 1984, the jury returned a verdict in Warnes's favor and awarded him $3 million in general and special damages. The trial court subsequently remitted this amount to $1 million.

### (b) Excess Insurer Files Suit

Following the trial court's remittitur ruling, Warnes offered to settle all outstanding claims against the Insured for $1.1 million, which Primary Insurer and the Insured ultimately accepted on February 28, 1985. As Primary Insurer had expended nearly $114,000 under its obligation to defend the action, it demanded that Excess Insurer respond to the portion of the settlement exceeding the primary limits. Reserving its rights to deny coverage, Excess Insurer agreed and contributed $213,314.94 to the settlement amount.

On March 7, 1985, *subsequent to* the *Warnes* parties' agreement on a compromise, Excess Insurer filed suit against Primary Insurer. The complaint alleged that Primary Insurer had acted negligently and in bad faith in failing to settle Warnes's personal injury claims against the Insured within the primary coverage limits.[2] Excess Insurer stated that it sought recovery for its *potential* losses from the judgment

---

**2.** In support of its claim of bad faith, Excess Insurer alleged:

1) Primary Insurer afforded the Insured $1 million in primary coverage, and Excess Insurer provided an additional $9 million in secondary coverage;

2) Primary Insurer refused a compromise offer of $350,000 prior to the trial of the case without consulting the Insured;

3) During the course of the trial Warnes offered to settle for $335,000, and Primary Insurer again rejected the offer without consulting the Insured;

4) The jury returned a verdict in Warnes's favor for $3,000,000, including all damages, and the trial court remitted the amount to $1 million;

5) Warnes subsequently offered to settle for a total of $1.1 million, which Primary Insurer again rejected.

against the Insured. The complaint inexplicably alleged that the Insured, Primary Insurer, and Warnes *had not* yet reached a compromise on the underlying litigation.[3]

As its "First Cause of Action," Excess Insurer asserted that Primary Insurer breached a duty it owed to Excess Insurer "not to unreasonably fail to settle claims within the primary limit," that Primary Insurer's failure to settle was "unreasonable, arbitrary, and in bad faith[,]" and that Primary Insurer was thereby "required to indemnify [Excess Insurer] against the excess of any judgment." As a "Second Cause of Action," Excess Insurer complained that Primary Insurer "owe[d] a duty to its assureds and the excess carrier to provide an adequate and competent defense to all claims[,]" and that Primary Insurer failed that duty, for which Excess Insurer was entitled to indemnity for any excess judgment rendered against the Insured.

In January 1987, Excess Insurer filed its "First Supplemental and Amending Complaint," adding Deutsch as a defendant. Excess Insurer asserted "third-party beneficiary" malpractice claims against the firm, alleging that it had provided an inadequate defense to the Insured. Excess Insurer did not mention in its Second Amended Complaint or in subsequent pleadings[4] the otherwise uncontradicted fact of the $1.1 million settlement with Warnes and the $213,314.94 contribution to this amount by Excess Insurer.

### *"Alternative" Motions*

In late 1988 Primary Insurer and Deutsch filed separate "Motion[s] to Dismiss and Alternative Motion[s] for Summary Judgment." They argued that Louisiana does not recognize a duty between primary and excess insurers with regard to settlement of claims against a common insured. Deutsch argued separately that it had no attorney-client relationship with Excess Insurer and that Excess Insurer could not be a third-party beneficiary to Deutsch's relationship with the Insured under Louisiana law. Excess Insurer responded: (i) Primary Insurer and Deutsch breached duties, including a good-faith duty to settle within the primary limits, which it owed to both the Insured and to Excess Insurer to provide the Insured with an adequate defense; and (ii) it had contributed $213,314.94 to the $1.1 million compromise of the underlying *Warnes* suit, by virtue of which it was subrogated to the Insured's claim against Primary Insurer and Deutsch for negligent and bad faith duty to settle within the primary limits.

Without specifying the method by which it was proceeding, Rule 12 or Rule 56, the trial court granted Primary Insurer's and Deutsch's motions on December 21, 1988, dismissing both parties with prejudice. Excess Insurer subsequently filed a Motion for Reconsideration, reurging the two contentions above, including a right of subrogation, and the trial court denied the motion. By its order dated August 14, 1989, disposing of all outstanding issues, the court entered judgment in the defendants' favor. Excess Insurer brings this appeal.

### II. The Effect of *Great Southwest*

To arrive at its conclusion that Excess Insurer's cause of action could not be sustained, the trial court relied on *Laper v. Board of Commissioners*, 523 So.2d 926 (La.App. 4th Cir.), *writ denied*, 531 So.2d 275 (La.1988), which held that a primary insurer, in handling the defense of the claim against the insured, owes no duty

---

**3.** *See supra* note 2. The complaint states, in pertinent part:

XII.

Following the Court's ruling, Warnes offered to compromise all outstanding claims, including future maintenance and cure, for a total of $1,100,000. [Primary Insurer] again rejected this demand, and further rejected [Excess Insurer's] proposal to jointly fund, with a reservation of rights, this settlement demand.

**4.** By second and third amended complaints Excess Insurer added General Accident Insurance Company, errors and omissions insurer of Deutsch, which Excess Insurer ultimately voluntarily dismissed prior to the trial court's judgment.

whatsoever to the excess insurer.[5] Prior to *Laper,* only one other Louisiana court had considered the question whether any duty exists between primary and excess insurers. *See Southern American Insur. Co. v. Hartford Accident & Indem. Co.,* 498 So.2d 280 (La.App. 1st Cir.1986), *writ denied,* 500 So.2d 425 (La.1987); *see also Laper,* 523 So.2d at 929–30 (Plotkin, J., dissenting); McKenzie and Johnson, Louisiana Civil Law Treatise: Insurance Law and Practice § 221 at 405–07. In *Southern American,* the Louisiana Court of Appeal for the First Circuit followed the federal court for the Eastern District of Louisiana, which had earlier concluded that the primary insurer owes a duty to the excess carrier in the representation of a common insured. *See Southern American,* 498 So.2d at 282 (citing *Utica Mutual Insur. Co. v. Coastal Marine, Inc.,* 578 F.Supp. 1376 (E.D.La.1984)). Despite this apparent conflict, the trial court relied on the more recent decision in *Laper* and found no duty, and therefore no cause of action, in the instant case.

■ An intervening case has changed the contours of Louisiana law in this area. One year after the trial court entered its judgment in this case, the Louisiana Supreme Court in *Great Southwest* recognized a remedy for a party situated in Excess Insurer's present posture. As an unexpressed tribute to the Fourth Circuit's prescience, the court held that the primary insurer does not owe any independent duty directly to the excess insurer. 557 So.2d at 971. However, the Louisiana Court stated that it would permit the excess insurer to seek recovery against the primary insurer "to the extent the excess insurer was subrogated to the rights of the insured." *Gibbs v. Liberty Mut. Insur. Co.,* 902 F.2d

361, 362 (5th Cir.1990) (*citing Great Southwest,* 557 So.2d at 968–69). This was, for the first time, an authoritative decision that subrogation is available to the excess insurer where it has made payment on behalf of its insured. In such a circumstance, the excess insurer will be able to recover from the primary insurer for the primary insurer's bad faith failure to settle the case within the primary limits, where such failure resulted in the excess judgment or compromise. *Great Southwest,* 557 So.2d at 969.

■ On this appeal, we must apply the law governing at the time of our consideration of the case, rather than that in effect at the time of the lower court's judgment. *Bradley v. School Bd. of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476, 488 (1974); *Carroll v. General Accident Insur. Co. of America,* 891 F.2d 1174, 1175–76 (5th Cir.1990). Thus, we apply *Great Southwest,* which governs the question presented in this case.

By letter briefs filed subsequent to the presentation of arguments in this case, Primary Insurer and Excess Insurer agree that the court considered and rejected Excess Insurer's contention of a right of subrogation when it dismissed Primary Insurer and Deutsch, both on the original motion for dismissal and alternatively for summary judgment and on Excess Insurer's motion for reconsideration. As we explain, it is clear that the court's rejection of the Excess Insurer's subrogation claim is, in light of *Great Southwest,* in error.

### III. Distinction Between Rule 12 and Rule 56

■ At the hearing on the Primary Insured's and Deutsch's "Motion[s] to Dis-

**5.** The court stated:
... I think that *Laper* does in fact control this situation. I think that when I first got this case my feeling was to the contrary to some extent, but there wasn't anything that had been decided by the Louisiana state courts with regard to the duty owed by the ... primary carrier to the excess carrier.... But I think now the only law strange as it may be that is directly on the issue is *Laper,* and I suspect I agree with it as a matter of policy, and I think I expressed this once before when I suggested that how on earth would an insur-

er have an obligation to a secondary insurer when it didn't even know as a matter of fact that it existed in the first place, had no agreement to provide anything more than coverage to a particular amount, and to provide a defense. The secondary insurer entered into the same agreement with the insured, to provide a defense and to provide coverage from a particular amount to another amount. Yet the two insurers have no relationship to one another, and I suspect as a matter of policy the decision of the Fourth Circuit in *Laper* is probably good law.

miss and Alternative Motion[s] for Summary Judgment," the trial court gave no indication whether it disposed of the case under Rule 12 or Rule 56. While an appellate court reviews a trial court's judgment *de novo* under either rule, different standards apply. A court which considers a motion for a 12(b)(6) or 12(c) dismissal must look only at the pleadings and accept all allegations in them as true. *Lujan v. National Wildlife Fed'n,* — U.S. ——, 110 S.Ct. 3177, 3184, 111 L.Ed.2d 695, 710–11 (1990); *Cramer v. Skinner,* 931 F.2d 1020, 1025 (5th Cir.1991). When material outside the pleadings is considered, however, the court will generally exercise its discretion to treat the motion as one for summary judgment. The court will then evaluate such extra-pleading materials to determine whether a genuine issue of material fact exists. F.R.Civ.P. 56(c); *see South Central Bell Telephone Co. v. Canal Place Ltd. Partnership,* 927 F.2d 867, 868 (5th Cir.1991). We conclude, first, that Deutsch was properly dismissed from the suit regardless of the method the court used, and, second, that the trial court ventured outside the pleadings in considering Primary Insurer's motion and, therefore, dismissed Primary Insurer on summary judgment, and that the grant of summary judgment in this case was in error.

### IV. The Merits

#### (a) Deutsch's Duty

First, we summarily dispose of any notion that Deutsch is liable to Excess Insurer under Louisiana law and hold that the trial court's dismissal of Deutsch was correct under either summary judgment or Rule 12. It is well established in Louisiana jurisprudence that the relationship between attorney and client is one of principal and agent. *See e.g., Dupre v. Marques,* 467 So.2d 65, 68 (La.App. 3rd Cir.), *writ denied,* 472 So.2d 38 (La.1985). In its amended complaint, however, Excess Insurer asserted that Deutsch is liable to it under a third party beneficiary theory.

**6.** Primary Insurer's Statement of Material Facts

This claim is without merit. Absent privity of contract, an attorney may make himself personally liable to third parties only if he exceeds the limits of his agency. *Sondes v. Sears, Roebuck & Co.,* 501 So.2d 829 (La.App. 4th Cir.1986); *Dupre,* 467 So.2d at 68; La.C.C.Art. 3013. In the alternative, an attorney may be answerable to a non-client for malpractice where the offended party is able to establish fraud or collusion. *See Bergman v. New England Insur. Co.,* 872 F.2d 672, 675–76 (5th Cir.1989) (applying Louisiana law) (*citing Olympia Roofing Co. v. City of New Orleans,* 288 So.2d 670 (La.App.), *cert. denied,* 292 So.2d 244 (La.1974)). Excess Insurer does not allege that Deutsch's actions fell within either of these exceptions. Instead Excess Insurer relies on the same theory it asserts against Primary Insurer—breach of its duty adequately to represent the Insured. Such a cause of action is not recognized in Louisiana. Furthermore, while *Great Southwest* authorized a right of action pursuant to subrogation by an excess insurer against a primary insurer, it did not address the issue of whether the attorney appointed to represent a primary insurer, here Deutsch, owes a similar duty to the excess insurer.

We conclude therefore that the district court's dismissal of Deutsch, whether accomplished under Rule 12 or Rule 56, is correct and stands.

#### (b) Excess v. Primary Under Which Rule Did the Court Rule?

A critical question is whether the trial court dismissed Primary Insurer on the pleadings pursuant to Rule 12 or by way of summary judgment under Rule 56. As we have stated, Primary Insurer's motion was styled a "Motion to Dismiss or Alternative Motion for Summary Judgment." In conjunction with this motion, Primary Insurer submitted a Statement of Uncontested Material Facts which established that Excess Insurer had paid a portion of the $1.1 million settlement with Warnes.[6] This document establishes the

sufficiently "go[es] beyond the pleadings" for

fact that Excess Insurer "paid $213,314.94, the difference between the settlement sum and the remainder of [Primary Insurer's] limits, toward the settlement." Excess Insurer asserted in its opposition memorandum that, by virtue of this payment, it was subrogated to the Insured's claims for bad faith failure to settle.[7]

We conclude that the court decided the case under Rule 56. The Statement of Uncontested Material Facts is the first evidence of the fact of payment by Excess Insurer, as the original and amended complaints made no such allegation. *See supra* Section I(b). Because this fact is not in the pleadings, summary judgment is the only means by which the fact could have been before the court. The fact of payment, furthermore, is essential to Excess

Insurer's argument of subrogation, asserted in its opposition memorandum, and we must assume that the trial court considered all theories presented by Excess Insurer and rejected them, including the contention that it is "conventionally and legally subrogated" to Primary Insurer. Under these circumstances there is no question but that the court treated Primary Insurer's motion as a motion for summary judgment, as it had to go outside the pleadings to decide the legal theory of subrogation grounded upon the fact of payment.[8] Accordingly, the moving party must show that he is entitled to judgment as a matter of law and that there is no genuine issue of material fact. *Federal Deposit Insur. Corp. v. International Property Management*, 929 F.2d 1033, 1034 (5th Cir.1991); F.R.Civ.P. 56.

purposes of meeting the shifted burden under Rule 56. That is, the nonmovant need not proffer its own Rule 56(e) proof in response to a motion for summary judgment if a genuine issue of material fact is evident from the evidence submitted by the movant. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198 (5th Cir. 1988). "Rule 56 explicitly requires only that the evidence to which the nonmovant points be 'on file'—not, as the defendants would have it, that the evidence be put on file by the nonmovant as part of its response." *Id.* Once the party moving for summary judgment discharges its burden of "'show[ing] initially the absence of a genuine issue concerning any material fact,'" *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142, 155 (1970), *quoted in Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 275 (1986), the nonmovant in response must:

"go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and *admissions on file*" designate "specific facts showing that there is a genuine issue for trial." ... Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except the mere pleadings themselves*, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred.

*Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274 (quoting F.R.Civ.P. 56(c, e)) (emphasis ours); *see also Isquith*, 847 F.2d at 198.

We therefore reject Primary Insurer's argument that in opposition Excess Insurer completely failed its burden to prove the existence of a genuine issue of material fact because it failed to submit affidavits or comparable evidence in accordance with Rule 56(e). To interpret the rule otherwise would unfairly skew the

burden-shifting in favor of the movant, who must in all situations satisfy the initial burden of showing the absence of a genuine issue concerning any material fact. *See id.*

7. In its opposition memorandum, Excess Insurer argued:

[Excess Insurer] contends that by virtue of its $213,000 payment to [the Insured] and Warnes, it is conventionally and legally subrogated to this right of [the Insured] to pursue [Primary Insurer] for its excess payment....

8. F.R.Civ.P. 12(b)(6) provides in part:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, *matters outside the pleading are presented to and not excluded by the court,* the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

(Emphasis added.)

Similarly, F.R.Civ.P. 12(c) provides in part:

If, on a motion for judgment on the pleadings, *matters outside the pleadings are presented to and not excluded by the court,* the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

(Emphasis added.)

While the alternative motion to dismiss in this case was styled neither as a 12(b)(6) nor as a 12(c) motion, we take from these rules the instruction that, where the court looks to extra-pleading material, the motion is one for summary judgment.

*Was Summary Judgment Proper?*

In view of the contention by Excess Insurer that it is subrogated to the Insured's rights, what did the district court's grant of summary judgment mean? It could have had one of two meanings: first, that Louisiana law does not recognize any right of subrogation by an excess insurer against a primary insurer; or, second, that it accepted the theory of subrogation, but Excess Insurer failed to satisfy the essential requirements of subrogation by showing (i) payment (which cannot be questioned) and (ii) bad faith. We hold that the court's grant of summary judgment must have the first meaning because, until *Great Southwest,* Louisiana did not recognize the possibility of an excess insurer's becoming subrogated to an insured's claims against a primary insurer. This reading is demonstrated also by the fact that the trial court made no mention of subrogation in his informal opinion granting summary judgment.[9]

The court necessarily held that there was no right of subrogation. It was clearly wrong. We therefore hold that the court's error requires reversal and remand for reconsideration in light of *Great Southwest.*

### V. Back to Court

For the foregoing reasons, we AFFIRM the trial court's judgment in favor of Deutsch, REVERSE its dismissal of Primary Insurer on summary judgment, and REMAND for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.