MOORE, J.
| Thomas Calhoun and Hope Calhoun, two members of RCSR, LLC (“the LLC”), appeal a summary judgment that approved the LLC’s act of withholding $25,000 each from their distributions, and ordered them to pay an additional capital call of $25,000 each, to cover attorney fees allegedly incurred 'by-the LLC in its dissolution. We find a genuine issue of material fact as to whether the LLC was liable under the fee agreement, which was'executed by another LLC member, Carolyn Huckabay, arid the attorneys, with nothing in the agreement stating that the LLC would be liable. We therefore reverse and remand for further proceedings.

Factual Background

The name of the LLC, RCSR, is taken from the initials of Riemer Calhoun Sr., a large landowner and former Louisiana State Senator from Mansfield. According to the summary judgment evidence, Riemer Sr. had expressed “deathbed wishes” to allocate his large estate to his wife, Hope Calhoun, two of his children, Carolyn Huckabay and Thomas Calhoun, and a daughter-in-law, Marcia Calhoun (wife of Riemer Sr.’s oldest child, Riemer Jr.). In 2004, these parties executed an operating agreement forming the LLC, designating themselves as the four managers — Marcia, Carolyn, Hope and Thomas — and giving each the power to “act individually without the joinder of’ the others (except to alienate the LLC’s mineral rights, a contingency inapplicable to this case). Addenda to the operating agreement listed each member’s share at 25%, with a contribution of $2,500 each plus “the conveyance by each member of the non-executive mineral rights” to 1,290 acres in Grand Bayou, Red *121 River Parish, formerly- owned by |gRiemer Sr.
Around 2010, Carolyn, Marcia and Riemer Jr. grew concerned that the elderly Hope intended to leave all her interest to Thomas, effectively giving him 50% control of the LLC, a result' that the late Riemer Sr. did not intend. They wanted to prevent this. They went to an attorney in Coushatta, Bill Jones, and asked hirií to draft mineral deeds conveying their original capital contributions from the LLC to separate entities ownéd by Marcia and Carolyn. On May 27,' 2010, Carolyn executed a fee agreement with Jones, designating herself (not the LLC) as the client, “in matters involving RCSR, LLC and its assets!,]” with the goal that the three children — Riemer Jr., Thomas and Carolyn— would end up sharing equally (one-third each) in the mineral rights. The fee agreement included this bonus provision:
Should my attorney be successful in my goal as set forth in the- beginning I will try to prevail on my brothers to pay the named attorney an additional fee of $100,000 to be paid from royalties on [two designated wells], I will request that this amount be paid based on production which in no ease shall exceed 20% on the monthly royalties or $10,000 per month whichever is less. (Emphasis added).
In the following days, however, Riemer Jr., Marcia and Carolyn persuaded Hope that a simpler solution would be to liquidate the LLC, distribute its assets one-third to each child, but give a 25% royalty interest to Hope. At Riemer Jr.’s suggestion, and with Carolyn’s approval, Jones retained another attorney, D. Scott Brown, of Mansfield, to draft the papers for the distribution, as Brown was supposedly already familiar with the large, noncontiguous estate, and split the fee 50/50 with Jones. Jones and Brown prepared a transfer of mineral rights and royalty interests, which the ^parties signed on June 11, 2010. This document conveyed the mineral interests one-third each to Thomas and to the entities controlled by Carolyn and Marcia, respectively, but conveyed the royalty interests 25% each to the mineral owners and to Hope. The attorneys also drafted a revocation, of the previous mineral deeds.
In July 2010, Carolyn honored her fée agreement." She wrote a check for $50,000 to Jones, and Riemer Jr. wrote a check for $50,000 to Brown. This was not, however, the end of the attorney fee matter.
In spite of the transfer, two operators continued sending royalty checks to the LLC directly. On February lli 2011, the LLC (through Marcia) sent a letter to each member stating that “we are in the process of dissolving the LLC” and outlining a final distribution. She cited the opinion of the LLC’s CPAs that “any legal fees relating to the dissolution of the LLC should be shared by 'the partners like all expenses have been handled over the years.” She wrote out checks of $25,000 each to Jones and Brown; $26,390 each to Carolyn and herself, for their 25% shares of the royalties; and $1,390 each to Hope and Thomas, for their 25% shares minus $25,000 for their, shares of the attorney fees.
On March 18, Thomas responded by letter, complaining that the $25,000 withhold-ings were -without his consent and requesting copies of all letters, legal papers, bills and other documents regarding Jones and Brown’s work. However, this letter was returned “refused”; Marcia later stated she was out of the country at the time.

\ ¿Procedural History

Thomas filed this suit in'May 2011, seeking an accounting under La. R.S. 12:1319 B(3), and naming the LLC and Marcia as *122 defendants. In early pleadings, Thomas successfully got Brown disqualified as the LLC’s attorney, as he would likely be a witness in the case.
In April 2012, the LLC (through Marcia) sent all members a capital call, stating that legal expenses of the dissolution and of defending Thomas’s suit would come to $32,500; thus, eacbr member had to contribute $8,125. Marcia later alleged that only Thomas and Hope “failed to respond” to the capital call. In June 2012, the LLC and Marcia filed a reconventional demand against Thomas and a third-party demand against Hope, to enforce the capital call.
In October 2012, the LLC and Marcia filed a motion for summary judgment contesting Thomas’s right to an accounting under § 1319 B(3). Before the hearing on this, Thomas filed an amended petition naming Marcia and Carolyn, individually, as defendants, and adding claims of unauthorized . distribution under La. R.S. 12:1327 and 1328, breach of contract, payment of a thing not due, conversion and unjust enrichment. The hearing, in January 2013, was limited to the original claim for an accounting, under § 1319 B(3). The district court granted summary judgment dismissing _ this claim, but denied it as to the reconventional demand for litigation expenses. Thomas did not appeal.
In May 2013, Thomas dismissed his amended petition as to Carolyn, with prejudice. He reserved all claims' against the LLC and Marcia.
I sIn July 2014, the LLC and Marcia filed the instant motion for summary judgment asserting that the distribution did not violate § 1327; that Thomas agreed to the distribution; ifihe was unhappy with Carolyn’s arrangement with Jones and Brown, he could have hired his own lawyer; and “any claim that .the legal bill was for ‘personal services’ rendered to -Carolyn, is simply folly.” .Thomas opposed the motion, arguing mainly that the -evidence presented a genuine issue of fact, whether Jones and Brown were representing the LLC or, rather, Carolyn and her separate business.
The parties argued the matter on February 3, 2015, offering portions'of the depositions of Carolyn, Marcia,1. Hope and Thomas; depositions and affidavits of the two lawyers, Jones and Brown; depositions of the CPAs, LeBlanc and HaUsk-necht; and copies of all the legal documents and letters mentioned above. The district court stated from the bench that his court was “not the proper venue” for complaining about an attorney fee, -and Thomas’s counsel agreed, “Right.” -
Three weeks later, the court issued a 1⅝ -page ruling on the motion for summary judgment, finding no issue of material fact that each member owed a 25% share of costs; the attorney fee to Jones and Brown was a valid cost; Thomas benefited from the- attorneys' work; Thomas and Hope had not yet paid -their $25,000 shares of the fee; hence, the $25,000 was properly withheld from their distributions. The court further found that Thomas and Hope were each liable for $25,000 on the capital call. An attached judgment granted summary judgment dismissing Thomas’s claim and ^ordering Thomas and Hope to pay $25,000 each.[1]
Thomas and Hope have appealed, raising two specifications of error.

*123
The Parties’ Positions

By their first specification of error, Thomas and Hope urge the record shows that Jones and Brown were the attorneys of Carolyn or Riemer Jr., rather than of the LLC; thus the court erred when it weighed the evidence, found no genuine issue of material fact and granted summary judgment dismissing Thomas’s claims. They contend that the fee agreement clearly designated only Carolyn, and not the LLC, as the client; the deposition testimony shows that the attorneys, Carolyn, Riemer Jr. arid Marcia all considered Carolyn the client; there was no evidence that he (Thomas) was aware of or consented to the fee agreement; hence, there was no basis to charge him any part of the 'attorney fee. They further contend that just because an attorney prepares an instrument for various parties to sign does not make him or her the attorney for all those who.sign. Bergman v. New England Ins. Co., 872 F.2d 672 (5 Cir.1989); Williams v. Roberts, 2006-169 (La.App. 3 Cir. 5/31/06), 931 So.2d 1217, writ denied, 2006-1780 (La.11/9/06), 941 So.2d 41. They argue that just because they signed the transfer drafted by Jones and Brown does not mean that Jones and Brown represented them (Thomas and Hope) or the LLC. At the very least, they contend, Carolyn’s intent was different from Thomas’s, thus creating a |7genuine issue that precludes suinmary judgment.
The LLC and Marcia respond that everyone was just trying to honor Riemer Sr.’s deathbed wishes, and that Thomas profited hugely from, the LLC, as his capital contribution was a mere 4 acres plus the $2,500, yet he received a 25% interest in 1,290 acres. They concede that Carolyn actually hired Jones, but argue this served the LLC and benefitted Thomas, as he wound up with 33½% of the minerals under the 1,290 acres; they show that Thomas even offered to pay Carolyn for his share of the fee. They also contend that any claim against Carolyn is waived, as Thomas dismissed her with prejudice in May 2013; the operating agreement clearly gave any. member the power to bind the LLC; the decision as to what was a valid LLC expense, “is simply not plaintiffs decision,” but belonged to all four members; and the appellants cannot challenge the ethics, of the attorney fee because they never, sued any attorney.

Discussion

A contract is an agreement by two' or more parties whereby obligations are created, .modified, or extinguished. La. C.C. art. 1906. The interpretation of a contract is the determination of the common intent of the parties, giving the words of the contract their generally prevailing meaning. La. C.C. arts. 2045, 2047; Campbell v. Melton, 2001-2578 (La.5/14/02), 817 So.2d 69. Testimonial or other evidence may not be admitted to negate or vary the contents of a written instrument, but in the interest of justice, such evidence may be admitted to prove such circumstances as a vice of consent or to prove that the written act was modified by a subsequent and | «valid oral agreement. La. C.C. art. 1848; Driver Pipeline Co. v. Cadeville Gas Storage LLC, 49,375 (La.App. 2 Cir. 10/1/14), 150 So.3d 492, writ denied, 2014-2304 (La.1/23/15), 159 So.3d 1058.
Each member of the LLC, if management is reserved to. the members, is a mandatary of the LLC for all matters in the ordinary course of its business. La. R.S. 12:1317 A. The profits and losses of an LLC shall be allocated among the members in the manner provided in the operating agreement. La. R.S. 12:1323.
The motion for summary judgment is a procedural device used when there is no genuine issue of material fact for. trial. Schultz v. Guoth, 2010-0343 *124 (La.1/19/11), 57 So.3d 1002, and citations therein. ' The motion shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. The procedure is favored and shall be construed to secure the just, speedy and inexpensive determination of actions. La. C.G.P. art. 966 A(2). Appellate review of summary judgment is de novo. Schultz v. Guoth, supra.
Even after the 1996 and 1997 amendments to Art. 966 that elevated summary judgment from disfavored to favored status;[2] the courts have continued to hold that the procedure is “seldom appropriate for determinations based on subjective facts of motive, intent, good faith, knowledge, or malice.” Hogg v. Chevron USA, 2009-2632 (La.7/6/10), 45 So.3d 991; Jones v. Estate of Santiago, 2003-1424 (La.4/14/04), 870 So.2d 1002; Fair Farms Inc. v. Holt, 48,246 (La.App. 2 Cir. 8/28/13), 124 So.3d 25, writ denied, 2013-2322 (La.12/6/13), 129 So.3d 535.
On de novo review, we are constrained to find a genuine issue of fact precluding summary judgment. The LLC correctly shows that under the operating agreement, “Each Manager shall have the power, authority and indemnification” to bind the LLC “individually without the joinder of the other Managers.” However, the fee agreement with Jones named “Carolyn Calhoun Huckabay, the undersigned client (hereinafter referred to as ‘I,’ /ME’ or ‘the Client’),” and did not refer to the LLC as the client. The purpose of the agreement was stated as “Representation in matters involving RCSR, LLC and its assetst,]” and “my goal” to ensure that the three siblings end up sharing one-third each in the LLC’s mineral' rights. Moreover, the “Additional Terms” stated that should Jones be “successful in my goal as .set forth in the beginning I will try to prevail on my brothers to pay the named attorney” the additional fee of $100,000.
In short, the only possible interpretation of the fee agreement is that Carolyn, individually, was retaining Jones to represent her in matters involving the LLC, -not to represent the LLC. Although the representation might ultimately benefit other LLC members, Carolyn agreed to prevail on those members, individually, to pay the bonus fee, not the LLC. The fee agreement nowhere, states that the LLC was the client or that the LLC would be responsible for any part of the fee.
| lftThis is not, therefore, the kind of case contemplated by R.S. 12:1317 A, in which a member of the LLC acted as a mandatary of the LLC for a matter in the ordinary course of its business. The fee agreement simply does not purport to bind the LLC. It binds Carolyn and obligates her to “prevail” on other LLC members for payment of the fee. Just because LLC members signed the transfer of mineral rights and .royalty interests drafted by Jones and Brown did not make Jones and Brown the attorneys for those members or the LLC. Bergman v. New England Ins., supra; Williams v. Roberts, supra.
■ This, finding also removes the case from the ambit of R.S. 12:1323, which would require the members to share in the profits and losses of the LLC according to the *125 operating agreement. The fee agreement did not obligate the LLC to any expense.
Instead, the case is about certain members’ efforts to alter the terms of the fee agreement to change the client from Carolyn to the LLC. As noted, extrinsic evidence is inadmissible to vary the terms of a written agreement. La. C.C. art. 1848; Driver Pipeline Co. v. Cadeville Gas Storage LLC, supra. Nevertheless, in the interest of justice, such evidence may be admitted to clarify an ambiguity and show the intent of the parties. Id., and citations therein.
On close review, this court agrees that the interest of justice requires the receipt and weighing of evidence as to whether any of the parties or the attorneys intended for Carolyn to bind the LLC by the fee agreement. However, the determination of subjective matters like intent is inappropriate lufor disposition by summary judgment. Hogg v. Chevron USA, supra; Jones v. Estate of Santiago, supra; Fair Farms Inc. v. Holt, supra. It is all the more inappropriate when the law states that “[testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature.”
In summary, whether Carolyn intended to bind the LLC is a genuine.-issue of material fact precluding summary judgment. Further, because the issue hinges on weighing the intent of the various parties, the case is not suitable for decision by summary judgment. The judgment is reversed and the case remanded to the district court for further proceedings.
In light of this finding, we pretermit-any consideration of Thomas and Hope’s second specification of error, that the evidence did not support the award of $25,000 on the reconventional demand. On remand, the district court will take note that the capital call was for only $8,125.

Conclusion

For the reasons expressed, the summary judgment is reversed and the matter is remanded for further proceedings consistent with this opinion. All costs are to be paid by RCSR LLC and Marcia Calhoun.
REVERSED AND REMANDED.

. The judgment recites that the "petition for an accounting is denied,” even though the accounting claim was already denied, in February 2013, and the instant motion addressed the conversion, breach of contract and quasi-contract claims. Also, the judgment awarded $25,000 each on the reconvention .and third-party demand, even though the capital call was only for $8,125. The LLC and Marcia concede in brief that the judgment is in error and must be deduced to the amount of the capital call.

. 1996 La, Acts (Ex. Sess.) No. 9, effective May 1, 1996, and 1997 La. Acts No, 483, eff. July 1, 1997; see, generally, Mark Tatum and William Norris III, “Summary Judgments and Partial Summary Judgments in Louisiana: The State We’re In,” 59 La. L. Rev. 131 (1998).